Steven T. ROBINSON, Plaintiff-Respondent-Petitioner, and PRIMECARE HEALTH PLAN, INC., Plaintiff-Respondent,

v.

CITY OF WEST ALLIS, Officer Anthony R. Ball and Officer James Schumitsch, Defendants-Appellants.

Supreme Court

*No. 98–1211. Oral argument October 5, 2000.—Decided December 13, 2000.*

2000 WI 126

(Also reported in 619 N.W.2d 692.)

596

For the plaintiff-respondent-petitioner there were briefs by *Phillip J. Ramthun, Patrick A. Callahan* and *Stern & Ramthun, LLP*, Milwaukee, with oral argument by *Phillip J. Ramthun.*

For the defendants-appellants there was a brief by *Michael J. Sachen*, city attorney, and *Scott E. Post*, assistant city attorney, and oral argument by *Scott E. Post.*

¶ 1. ANN WALSH BRADLEY, J. Petitioner, Steven T. Robinson (Robinson), seeks review of an unpublished decision of the court of appeals reversing the circuit court's denial of summary judgment as to Robinson's claims that the police used excessive force during his arrest and that the police failed to provide him with medical attention.[1] The court of appeals held

---

[1] *Robinson v. City of West Allis*, No. 98–1211, unpublished slip opinion (Wis. Ct. App. Nov. 23, 1999) (reversing and

that Robinson was unable to sustain his excessive use of force claim against defendants, the City of West Allis (City) and West Allis police officers Anthony T. Ball (Ball) and James Schumitsch (Schumitsch), because he did not proffer an affidavit of an expert countering that offered by the defendants. The court also held that Robinson's claim of failure to provide medical attention against the defendant-officers failed because the officers were not required to obtain medical treatment under the facts of this case.

¶ 2. We agree that under the facts of this case it is proper to grant summary judgment dismissing Robinson's claim of failure to provide medical attention. However, because we determine that Robinson was not required to submit an affidavit of an expert to avoid summary judgment on his excessive use of force claim and because we reject the several defenses to that claim raised by the defendants, we reverse the court of appeals and remand for further proceedings.

I.

¶ 3. This case arises from an altercation between the defendant-officers and Robinson at approximately 1:00 a.m. on June 10, 1995. The deposition testimony of the parties, incorporated into the summary judgment motion, reveals that the facts surrounding this altercation are in dispute.

¶ 4. Robinson, with Judy Schneider (Schneider) as his passenger, parked his motorcycle outside a West Allis establishment. After Robinson alighted from his motorcycle, he claims Officer Ball, who had stopped his squad car behind the motorcycle, approached Robinson

remanding order of the Circuit Court for Milwaukee County, Christopher R. Foley, Judge).

and told him he was under arrest for eluding an officer and speeding.[2] Robinson asserts that he then put his hands on the car, while Ball patted him down. Ball, on the other hand, explains that Robinson refused to remove his hands from his pockets and that Ball forcibly removed them and placed them on the hood of the car. Meanwhile, at about this time, another squad car driven by Officer Schumitsch arrived at the scene.

¶ 5. Robinson states that after the pat-down he removed a folding knife he carried on his belt from its sheath and handed it to Schneider. Officer Schumitsch describes, however, that he saw Robinson with the closed knife and grabbed Robinson's hand ordering him to release the weapon. At this point, Schumitsch maintains that Robinson tossed the knife to Schneider who caught it, and Ball then retrieved it from Schneider.

¶ 6. The officers explain that they attempted to control Robinson by maneuvering him towards the hood of the vehicle. Both officers recount how during the struggle to control Robinson, he began stomping, striking Schumitsch in the foot. They indicate that they were unable to apply handcuffs to Robinson while he was standing and therefore moved him to the ground. Robinson, however, asserts that Schumitsch threw him onto the hood of the car and stated that he was under arrest for carrying a concealed weapon.

¶ 7. According to Robinson, while he was still bent over the hood of the squad car, Schumitsch conducted another pat-down and then ordered Robinson to place his hands behind his back. Robinson testified that, in response to what he perceived as the officer's aggressiveness, he refused to cooperate. He claims that the officers then managed to maneuver one of his

---

[2] No subsequent charges were issued for those offenses.

hands behind his back and clasp a handcuff to that hand. Robinson maintains that the officers then pepper sprayed his face.

¶ 8. The officers admit pepper spraying Robinson, but claim it was done after Robinson was maneuvered to the ground, before either hand was cuffed. Under Robinson's version of events he was not maneuvered to the ground, but rather he states that after being sprayed, he turned around, and in a dazed and confused fashion staggered, until he was tackled to the ground.

¶ 9. Robinson alleges that one of the officers punched him in the side of the head and then grabbed him by the hair and smashed his face into the ground. However, at another point in the deposition, Robinson seems to state that he was punched in the face while bent over the hood of the squad car.

¶ 10. It is unclear when the officers affixed the handcuffs to both of Robinson's wrists. After being handcuffed, Robinson asserts that the officers picked him up by the belt at the back of his pants and carried him to the curb where he was dropped to the ground from a height of two and a half or three feet, landing on his chest on the curb. The officers deny striking Robinson with their fists or feet during the entire encounter and· deny smashing Robinson's face into the ground. Both officers also deny picking Robinson up by the belt and dropping him.

¶ 11. Robinson states that while he lay across the curb with his face on the street, Schumitsch stood with his foot in the middle of Robinson's back. In response, Robinson testified that he told Schumitsch that he had high blood pressure and polycystic kidneys and asked that Schumitsch remove his foot from Robinson's back. Robinson told Schumitsch that because of his kidney

condition, he ran the risk of bursting a cyst if punched in the back. Both officers deny that either of them stood upon Robinson or that he told either of them of a preexisting condition.

¶ 12. Robinson maintains that he was unconscious for an indefinite period of time. When he regained consciousness, rescue personnel from the fire department were present. The rescue squad flushed Robinson's eyes of the pepper spray. Robinson does not recall the rescue squad inquiring about any further medical attention and states that he did not volunteer any information regarding his kidney condition to the personnel treating his eyes.

¶ 13. Several minutes later, the police placed Robinson in a police van to be escorted to the police station. Robinson claims that at that point, he requested to go to the hospital because his face felt like it was "on fire" and because he could not "breathe good." The officers both recount Robinson complaining of the effects of the pepper spray. Once at the police station, he explains that he did not seek any further attention for the burning sensation to his face, because he had asked once and had been denied and because he did not believe the police would allow him any medical attention. Robinson eventually arrived at the Milwaukee County jail, by which point he acknowledges that he no longer needed medical attention.

¶ 14. During his deposition, Robinson describes the injuries he suffered as consisting of cuts, bruises, and abrasions to his head, and a large boot-print shaped bruise on his back. He also makes reference to treatment for a thumb injury and a shoulder injury apparently suffered during the altercation. Robinson's deposition contains no mention of any problems or pain

caused by or associated with his kidney condition or reported high blood pressure.

¶ 15. Following his arrest, the Milwaukee County District Attorney's office issued charges against Robinson for the following violations: (1) operating a vehicle following·revocation (4th offense); (2) carrying a concealed weapon; (3) resisting an officer; (4) battery to a law enforcement officer; and (5) disorderly conduct.

¶ 16. Pursuant to a plea agreement, Robinson agreed to plead guilty to the charge of carrying a concealed weapon and to plead no contest to the charge of battery to a law enforcement officer. The prosecution agreed to dismiss the three remaining charges in the complaint and allow them to be read in for sentencing purposes.[3]

¶ 17. A Milwaukee County circuit court accepted Robinson's pleas following a plea colloquy and entered a judgment of conviction for the two offenses. At the close of that colloquy, Robinson agreed to the use of the facts in the criminal complaint as the factual basis for the two charges to which he pled. ·

¶ 18. Robinson then began this civil action alleging violations of his constitutional rights.[4] Relevant to

---

[3] Wisconsin Stat. § 973.20(1g)(b) (1995–96) explains:

"Read-in crime" means any crime that is uncharged or that is dismissed as part of a plea agreement, that the defendant agrees to be considered by the court at the time of sentencing and that the court considers at the time of sentencing the defendant for the crime for which the defendant was convicted.

All subsequent references to the Wisconsin Statutes are to the 1995–96 volumes unless otherwise indicated.

[4] Robinson did not reference 42 U.S.C. § 1983 in his complaint. However, he did plead all of the essential elements of the claim, and both parties, the circuit court, and the court of

this appeal, Robinson alleged that Ball and Schumitsch were liable for violations of his Fourteenth Amendment rights through their use of "unjustified and excessive force." In addition, the complaint alleged that the officers had denied him requested medical assistance for his injuries. He further alleged that the City of West Allis was liable for these violations on the grounds that it "authorized, tolerated as institutional practices, and ratified" Ball's and Schumitsch's actions.

¶ 19. The defendants moved for summary judgment. Despite the many disputes between the parties as to the facts, the defendants argued on various grounds that they were entitled to summary judgment because Robinson could not proceed with his causes of action as a matter of law.

¶ 20. In addressing the claimed excessive use of force, the City and officers argued that Robinson was foreclosed by the doctrine of issue preclusion from taking a position inconsistent with the facts as presented in the criminal complaint. In addition, they argued that because this civil rights action would imply the invalidity of his criminal convictions it could not be maintained under *Heck v. Humphrey*, 512 U.S. 477 (1994). The defendants also contended that Officers Ball and Schumitsch were entitled to qualified immu-

appeals accept that this action was brought under 42 U.S.C. § 1983. 42 U.S.C. § 1983 (1994) reads, in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

nity. With regard to the allegation of failure to provide medical attention, the defendants argued that it failed as a claim because Robinson alleged neither a resulting injury nor the requisite standard of "deliberate indifference."[5]

¶ 21. An affidavit of Captain Gerald Amerpohl of the West Allis Police Department was included in the defendants' summary judgment materials. In the affidavit Captain Amerpohl states his credentials as a trainer of police officers. He then renders his opinion that the force used by Officers Ball and Schumitsch to gain control of the knife in Robinson's possession and to handcuff him was reasonable and proper under accepted standards for the use of force.

¶ 22. The circuit court denied the motion for summary judgment as to the excessive use of force claim on the grounds that there was a material issue of fact as to whether or not excessive force was used. The court also denied the motion concerning the claim against the officers for failure to provide medical attention because it found there to be material issues of fact.

¶ 23. The defendants sought interlocutory review of the denial of summary judgment, and over Robinson's objection, the court of appeals granted

---

[5] The City also argued that Robinson's failure to allege a municipal policy of deliberate indifference to medical needs was fatal. The circuit court agreed and dismissed this claim against the City. Robinson has not appealed this dismissal.

Likewise, the defendants successfully contested Robinson's claim that the initial stop and arrest were in violation of the Fourth Amendment because he was never charged with a traffic violation and because Officer Ball did not use his lights or sirens. The circuit court dismissed this claim as it related to both the City and the individual defendants. Robinson has not appealed this dismissal.

review. The court of appeals reversed the circuit court, stating that the circuit court inappropriately failed to consider the consequences of Captain Amerpohl's affidavit in the summary judgment context. In the court of appeals' view, because the defendants presented an affidavit by an expert witness addressing the reasonableness of the officers' conduct, Robinson was required to counter this affidavit with that of an expert opining as to the unreasonableness of the officers' conduct. Thus, the court concluded Robinson could not sustain his claim for use of excessive force without a countering affidavit.

¶ 24. The court of appeals also reversed the circuit court's denial of summary judgment on Robinson's claim of failure to provide medical assistance. The court of appeals held that the claim failed for two reasons. Officers Ball and Schumitsch were not required to obtain medical assistance for Robinson's preexisting conditions, because there was nothing to suggest that he was ill as a result of those conditions. Also, Robinson's alleged request for treatment for the burning sensation on his face did not relate to a "serious injury" and therefore did not amount to a constitutional violation.

## II.

¶ 25. We are asked by Robinson to review the bases of the court of appeals' decision. In addition, the defendants present us with several arguments they claim provide alternative grounds for upholding the outcome reached by the court of appeals regarding the excessive use of force claim. As they argued before the circuit court and court of appeals, the defendants contend that summary judgment is necessitated by the doctrine of issue preclusion, the rule of *Heck v.*

*Humphrey*, and qualified immunity. The defendants newly allege that Robinson has waived a portion of his claims through his arguments to the court of appeals.[6]

■

¶ 26. We review a grant or denial of summary judgment independently of the determinations rendered by the circuit court and the court of appeals. *State ex rel. Auchinleck v. Town of LaGrange*, 200 Wis. 2d 585, 591–92, 547 N.W.2d 587 (1996). However, we apply the same methodology as that used by the circuit court. *Id.* A motion for summary judgment shall be granted when the pleadings and supporting papers show no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Wis. Stat. § 802.08(2). Where there is a dispute, even as to material facts, " 'those facts become irrelevant if, in giving full benefit to the party against whom summary judgment is sought, the claim is nevertheless barred as a matter of law.' " *Torgerson v. Journal/Sentinel, Inc.*, 210 Wis. 2d 524, 537, 563 N.W.2d 472 (1997) (quoting *Byrne v. Bercker*, 176 Wis. 2d 1037, 1045, 501 N.W.2d 402 (1993)).

---

[6] In addition, although not fully developed in their brief, at oral argument defendants sought to individually attack the allegation that the officers picked Robinson up by his belt and dropped him. They argue that it does not constitute an actionable claim because Robinson has not alleged any particular resultant injury. In response, we simply note that, construing the inferences drawn from the evidence most favorably to Robinson, he has alleged numerous injuries suffered in the altercation.

## III. EXCESSIVE USE OF FORCE CLAIM

▉

¶ 27. We initially examine the challenges to Robinson's claim that defendants used excessive force during his arrest. A claim of excessive use of force arising during arrest is grounded in the Fourth Amendment protection against unreasonable seizures as applied to the states by the Fourteenth Amendment. *Graham v. Connor*, 490 U.S. 386, 394 (1989); *Felder v. Casey*, 150 Wis. 2d 458, 471, 441 N.W.2d 725 (1989).[7] The standard for determining whether a police officer's exercise of force is excessive is whether the officer's actions are objectively reasonable. *Graham*, 490 U.S. at 397. Wisconsin JI—Civil 2155 provides that to sustain a claim for excessive use of force during arrest under 42 U.S.C. § 1983, the plaintiff must establish that an officer was acting under color of law and that the officer's use of force was unreasonable.

### Expert Affidavit

¶ 28. We first address whether the court of appeals was correct in concluding that as a matter of law expert testimony is necessary to establish "[w]hat constitutes reasonable force during an arrest and what are accepted practices for police when confronted with an uncooperative and armed person." In reaching this

---

[7] The defendants argue that a portion of Robinson's excessive force claims were subject to a different standard under the Eighth Amendment. We disagree. The Eighth Amendment protection from excessive use of force arises following conviction. *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989); *Whitley v. Albers*, 475 U.S. 312, 318–19 (1986). Because Robinson's allegations occur during an arrest, we believe that the entirety of Robinson's excessive force claim is grounded in the Fourth Amendment protection against unreasonable seizures.

conclusion the court determined that the matter was beyond "the realm of ordinary experience and lay comprehension." Because we conclude that determinations of excessive use of force are not, in general, beyond the realm of ordinary experience and lay comprehension, we reject a categorical requirement of expert testimony in excessive use of force cases.

¶ 29. The question before the court is not whether certain expert testimony is admissible, but rather whether it is mandatory in a certain class of cases. This court has stated that "requiring expert testimony rather than simply permitting it represents an extraordinary step, one to be taken only when 'unusually complex or esoteric issues are before the jury.' " *Weiss v. United Fire & Casualty Co.*, 197 Wis. 2d 365, 379, 541 N.W.2d 753 (1995) (quoting *White v. Leeder*, 149 Wis. 2d 948, 960, 440 N.W.2d 557 (1989)). Expert testimony is mandatory only where the matter is "not within the realm of ordinary experience and lay comprehension." *White*, 149 Wis. 2d at 960.

¶ 30. Although this court has not often addressed excessive use of force as a constitutional violation pursued under 42 U.S.C. § 1983, we have addressed it as a common law cause of action. *Johnson v. Ray*, 99 Wis. 2d 777, 299 N.W.2d 849 (1981); *McCluskey v. Steinhorst*, 45 Wis. 2d 350, 173 N.W.2d 148 (1970). The touchstone of both causes of action is the objective reasonableness of the use of force. *Compare Graham*, 490 U.S. at 397, *with Johnson*, 99 Wis. 2d at 781–83.

¶ 31. A point of emphasis in our past excessive use of force cases is that the issue is one properly entrusted to the jury. We believe the approach of our prior case law belies any contention that the matter is necessarily beyond the jury's comprehension. In our

cases discussing the common law cause of action, we have repeated the following explanation of the reasonableness test:

> "What amounts to reasonable force on the part of an officer making an arrest usually depends on the facts in the particular case, and hence the question is for the jury. The reasonableness of the force used must be judged in the light of the circumstances as they appeared to the officer at the time he acted, and the measure is generally considered to be that which an ordinarily prudent and intelligent person, with the knowledge and in the situation of the arresting officer, would have deemed necessary under the circumstances."

*McCluskey*, 45 Wis. 2d at 354 (quoting 5 Am. Jur. 2d, Arrest, § 81 (1962)); *Johnson*, 99 Wis. 2d at 782–83; *see also Wirsing v. Krzeminski*, 61 Wis. 2d 513, 524, 213 N.W.2d 37 (1973).

¶ 32. We cannot at once emphasize the jury's responsibility for applying the standard of reasonableness and also claim that the issue is beyond the jury's comprehension. Requiring an expert as a prerequisite to a finding of use of excessive force would essentially remove from the jury the task of applying standards of, reasonableness and replace it with the task of evaluating the testimony of the parties' experts.

¶ 33. Moreover, a per se rule that expert testimony is necessary to enlighten a jury as to what is reasonable when police confront an "uncooperative and armed person" conflicts with our recognition of the fact-intensive nature of excessive force cases. We have repeated throughout our discussions that "[t]he reasonableness of the force depends upon the facts of each case." *Johnson*, 99 Wis. 2d at 782. Just as the facts of

each case dictate the reasonableness inquiry, so too should they dictate whether expert testimony is needed in a given case. We continue to believe that "[w]hether expert testimony is required in a given situation must be answered on a case-by-case basis." *Netzel v. State Sand & Gravel Co.*, 51 Wis. 2d 1, 6, 186 N.W.2d 258 (1971).

¶ 34. Having rejected a per se requirement of expert testimony, we must decide whether expert testimony is needed in this case. While there may be cases in which the subtleties of police procedure and practice justifying a particular use of force are so far removed from the comprehension of a lay jury as to necessitate an expert, this is not one of them. We have reviewed the summary judgment materials presented by the parties and conclude that the facts of this case are not so complex and esoteric as to require an expert to determine whether the force used by Ball and Schumitsch was reasonable.

¶ 35. Because we are reviewing a grant of summary judgment, we must accept Robinson's version of the disputed facts. Under these facts there is no indication that the reasonableness of the officers' actions involves matters so complex as to necessitate an expert. One need not be an expert to determine whether a reasonable use of force in effectuating an arrest includes smashing an arrestee's face to the ground or landing a punch to the side of his head. Similarly, a jury does not need the opinion of an expert to determine whether a police officer acted reasonably in picking up a handcuffed individual by the belt and dropping him to the ground and then standing upon him. The difficulty a jury will have with this case lies not in applying the reasonableness standard to the

facts as it finds them but in untangling the disputed facts presented by the parties.

¶ 36. In addition, regardless of the necessity of expert testimony in this case, no effect should have been given to Captain Amerpohl's affidavit at the summary judgment stage given the disputed factual basis underlying his opinion. It fails to address Robinson's allegations that he was punched, stood upon, and dropped to the curb or that the officers smashed his face on the ground.

¶ 37. We conclude that Robinson was not required to submit an affidavit of an expert and therefore that his failure to do so was not a proper basis for granting summary judgment. Accordingly, we must address the arguments that the defendants offer as alternative grounds for upholding the court of appeals' decision.

## Issue Preclusion

¶ 38. The defendants assert that the doctrine of issue preclusion bars Robinson's excessive use of force claim. They contend that Robinson is barred from claiming facts different from those in the criminal complaint, and that this eliminates any issues of material fact. The defendants believe that this would clear the way for dismissal of the case as a matter of law, because the facts in the complaint do not include the conduct that serves as the basis for Robinson's excessive use of force claim.

¶ 39. Issue preclusion limits the relitigation of issues that have been contested in a previous action between the same or different parties. *Michelle T. v. Crozier*, 173 Wis. 2d 681, 687, 495 N.W.2d 327 (1993).

The doctrine is intended to prevent parties from revisiting issues "actually litigated in a previous action." *Paige K.B. v. Steven G.B.*, 226 Wis. 2d 210, 219, 594 N.W.2d 370 (1999). The preclusive effect of prior litigation arises where " 'an issue is actually and necessarily determined by a court of competent jurisdiction.' " *Id.* (quoting *Montana v. United States*, 440 U.S. 147, 153 (1979)).[8]

¶ 40. The defendants' issue preclusion argument essentially entails three distinct issues; namely, the preclusive effect on this subsequent civil action of the read-in charges, the no contest plea, and the guilty plea, respectively. We examine each in turn, and conclude that none of the aspects of the prior criminal proceeding has a preclusive effect on Robinson's excessive use of force claim.

¶ 41. We first examine the effect of the read-in charges. As a consequence of the plea agreement, Robinson agreed to have the charges of resisting an officer, disorderly conduct, and operating a vehicle after revocation read-in for consideration at sentencing. The defendants quite correctly quote *State v.*

[8] Normally, the circuit court's issue preclusion determination will stand unless it constitutes an erroneous exercise of discretion. *Paige K.B. v. Steven G.B.*, 226 Wis. 2d 210, 225, 594 N.W.2d 370 (1999). In the case at hand, the record reflects no exercise of discretion in the denial of summary judgment with respect to the issue preclusion challenge to Robinson's excessive force claim. The circuit court failed to address that issue. Where the circuit court fails to set forth the reasoning behind an exercise of discretion, we need not reverse if our independent review of the record reveals a basis for sustaining the circuit court's action. *State v. Pittman*, 174 Wis. 2d 255, 268, 496 N.W.2d 74 (1993). We thus independently inquire into whether issue preclusion bars this claim.

*Szarkowitz*, 157 Wis. 2d 740, 753, 460 N.W.2d 819 (Ct. App. 1990), for the proposition that "when a defendant agrees to crimes being read in at the time of sentencing, he makes an admission that he committed those crimes." However, it is a significant step to argue the admission of crimes for sentencing purposes as part of a plea agreement necessarily will have a preclusive effect in a subsequent civil action.

¶ 42. Read-in charges have historically served a limited function. We explained in *Austin v. State* that

> [u]nder our read-in procedure, the defendant does not plead to any charges and therefore is not sentenced on any of the read-in charges but such admitted uncharged offenses are considered in sentencing him on the charged offense.

49 Wis. 2d 727, 732, 183 N.W.2d 56 (1971). Beyond their effect on sentencing, read-ins also serve a role in setting restitution. *See* Wis. Stat. § 973.20(1g) & (1r). While they do have a preclusive effect in the criminal context in that the state is prohibited from future prosecution of the read-in charges, *State v. Floyd*, 2000 WI 14, ¶ 25, 232 Wis. 2d 767, 778, 606 N.W.2d 155, they are not otherwise treated as adjudications of guilt. *See Austin*, 49 Wis. 2d at 732 ("Read-in offenses are not prior convictions and cannot be used under sec. 973.12, the repeater statute.").

¶ 43. Consideration of read-in charges during sentencing is not tantamount to actual litigation of the underlying issues. The sentencing court performs no adjudication of the read-in charges, and it cannot be said that any issues are actually and necessarily determined. Because issue preclusion applies only where

issues have been actually litigated in a previous action, the read-in charges cannot serve as a bar here.

¶ 44. Next we consider the effect of Robinson's plea of no contest to the charge of battery to a law enforcement officer. The benefit of a no contest plea has to this point been limited to the evidentiary bar of the use of the plea as an admission of the crime charged. *See* Wis. Stat. § 904.10. "The essential characteristic of a plea of *nolo contendere* is that it cannot be used collaterally as an admission." *Lee v. State Bd. of Dental Exam'rs*, 29 Wis. 2d 330, 334, 139 N.W.2d 61 (1966).

¶ 45. This court has never been asked to decide the issue of whether a no contest plea has a preclusive effect in subsequent civil litigation. However, we have commented on the subject. In *Michelle T.*, we quoted the Restatement (Second) of Judgments:

> "The rule of [§ 85 Effect of a Criminal Judgment in Subsequent Civil Action] presupposes that the issue in question was actually litigated in the criminal prosecution. . . .Accordingly the rule of this Section does not apply where the criminal judgment was based on a plea of *nolo contendere*. . . . A plea of *nolo contendere* by definition obviates actual adjudication and under prevailing interpretation is not an admission."

173 Wis. 2d at 687 n.7 (quoting Restatement (Second) of Judgments § 85 cmt. b (1982)). Similarly, the court of appeals has commented on the issue, stating that a plea of "nolo contendere in the criminal suit does not draw any issues into controversy and does not support the use of collateral estoppel." *Crowall v. Heritage Mut. Ins. Co.*, 118 Wis. 2d 120, 122 n.2, 346 N.W.2d 327 (Ct. App. 1984); *Amber J.F. v. Richard B.*, 205 Wis. 2d 510,

517–18, 557 N.W.2d 84 (Ct. App. 1996) (citing *Crowall*).

¶ 46. We embrace today the rule suggested in these prior cases. The essential characteristic of the no contest plea, which is that it cannot be used collaterally as an admission in future civil litigation, dictates that the defendants may not use the plea to prevent litigation in this subsequent civil action.

¶ 47. The remaining aspect of the prior criminal action to be examined is Robinson's plea of guilty for carrying a concealed weapon in contravention of Wis. Stat. § 941.23.[9] We need not address whether a guilty plea may have a preclusive effect, because we find that no issues related to the conviction for carrying a concealed weapon are being relitigated in this action. Robinson freely admits that he was knowingly in possession of the knife. Indeed, this is one of the few historical facts agreed upon by the parties. We fail to see how Robinson's claim of excessive use of force will implicate any of the issues underlying his guilty plea and conviction for carrying a concealed weapon.

¶ 48. In sum, we conclude that neither the read-in charges nor the no contest plea has a preclusive effect. We also conclude that Robinson's excessive force claim does not require relitigation of the issues underlying his guilty plea. Thus, issue preclusion does not prevent him from presenting facts that differ from those set forth in the criminal complaint.

---

[9] Wisconsin Stat. § 941.23 reads: "Any person except a peace officer who goes armed with a concealed and dangerous weapon is guilty of a Class A misdemeanor."

618

¶ 49. The defendants additionally argue that Robinson's excessive use of force claim is in part barred by the doctrine of *Heck v. Humphrey*, 512 U.S. 477 (1994). Under *Heck*, when a plaintiff seeks damages under 42 U.S.C. § 1983, the court must consider "whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Id.* at 487. If the action would imply the invalidity of the prior conviction or sentence, it must be dismissed unless the plaintiff can show that the conviction or sentence has already been invalidated. *Id.*

¶ 50. Similar to their issue preclusion argument, the defendants contend that *Heck* supports dismissal of petitioner's "claims [of excessive force] prior to being in custody," because these pre-custody claims imply the invalidity of Robinson's convictions and the read-in charges. We need not decipher which of Robinson's allegations the defendants believe arose prior to "custody," because we conclude that none of Robinson's allegations implicates the prior criminal action in a manner requiring dismissal under *Heck*.

¶ 51. The defendants present us with no authority to support the proposition that the *Heck* doctrine is meant to protect the integrity of read-in charges. Indeed, the Supreme Court explained that the doctrine prevents a § 1983 claim only if it will imply the invalidity of an "outstanding criminal *judgment* against the plaintiff." *Heck*, 512 U.S. at 487 (emphasis added). Because read-in charges are not criminal judgments, we conclude they do not implicate the rule of *Heck v. Humphrey*.

¶ 52. Turning our attention to Robinson's two convictions, which clearly are criminal judgments, we must determine whether his excessive force claim "nec-

essarily impl[ies] the invalidity" of these convictions. *Id.* In determining whether a § 1983 claim so invalidates a prior conviction, the Supreme Court suggested that the proper inquiry is whether the § 1983 claim requires negation of an element of the offense for which the plaintiff was convicted. *Id.* at 486 n.6.

¶ 53. Robinson was convicted of the offense of battery to a law enforcement officer, in violation of Wis. Stat. § 940.20(2).[10] We find no element of that offense that will necessarily be negated through proof of Robinson's excessive use of force claim. Similarly, as we explained in regard to defendants' issue preclusion argument, Robinson's § 1983 claim does not implicate his conviction for carrying a concealed weapon in violation of Wis. Stat. § 941.23. We therefore find no reason under *Heck* to grant summary judgment dismissing Robinson's claim or any portion of that claim.

## Waiver

¶ 54. The defendants contend that, as a result of a statement made by Robinson in his brief to the court of appeals, he has waived any claims arising from conduct prior to his being "restrained and subdued." In that brief, Robinson made the following statement: "Here, because the plaintiff does not contest the authority of the officers to arrest him and only com-

---

[10] Wisconsin Stat. § 940.20(2) reads:

Battery to Law Enforcement Officers and Fire Fighters. Whoever intentionally causes bodily harm to a law enforcement officer or fire fighter, as those terms are defined in s. 102.475(8)(b) and (c), acting in an official capacity and the person knows or has reason to know that the victim is a law enforcement officer or fire fighter, by an act done without the consent of the person so injured, is guilty of a Class D felony.

plains of conduct arising after he had been restrained and subdued, the excessive use of force claim has no effect on the validity of the plaintiff's arrest or on his subsequent confinement." Robinson repeated this statement in a brief to this court as well.

¶ 55. We decline to give this statement the effect desired by defendants. Read in context, the sentence was part of an argument by which Robinson was attempting to explain that his § 1983 claim did not attack the validity of his arrest and was not intended as a statement of waiver. Moreover, the statement is rather unspecific and is even less definite when considered in light of the disputed factual record.

## Qualified Immunity

¶ 56. The last issue we address with respect to Robinson's claim of excessive use of force is whether the defendant-officers are entitled to qualified immunity. Qualified immunity protects governmental officials from § 1983 claims when carrying out a discretionary function. *Henes v. Morrissey*, 194 Wis. 2d 338, 346, 533 N.W.2d 802 (1995). When faced with the defense of qualified immunity the plaintiff bears the burden of establishing that a defendant's conduct violated " 'clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Id.* (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

¶ 57. While it is clearly established that an individual has a right to be free from excessive force, our qualified immunity inquiry must be much more particularized as to the facts of each case. *Anderson v. Creighton*, 483 U.S. 635, 639–40 (1987). Both parties in this case advocate the approach adopted by the Sev-

enth Circuit to determine whether the facts of a particular case demonstrate violation of a clearly established right. In the excessive force context that approach requires that the plaintiff "(1) point[ ] to a closely analogous case that established a right to be free from the type of force the police officers used on him, or (2) show[ ] that the force was so plainly excessive that, as an objective matter, the police officers would have been on notice that they were violating the Fourth Amendment." *Clash v. Beatty*, 77 F.3d 1045, 1048 (7th Cir. 1996).

¶ 58. In their briefs and at oral argument the parties engage in a debate over arguably analogous case law. As Robinson notes, qualified immunity does not require him to identify cases that contain the exact facts he is alleging. *See McDonald v. Haskins*, 966 F.2d 292, 295 (7th Cir. 1992). Furthermore, Robinson's version of events presents facts that arguably could "thrust this case into the 'plainly excessive' category." *Rice v. Burks*, 999 F.2d 1172, 1174 (7th Cir. 1993). However, in order for us to engage in either inquiry and ultimately to determine the matter of qualified immunity, the factual record must be deciphered.

¶ 59. We are unable to say that the defendants' use of force in this case was reasonable as a matter of law given the nebulous set of facts presented in the summary judgment materials. We have only a tenuous grasp on the timing of events as they unfolded during the altercation and believe it would be impossible for us to rule on the issue of qualified immunity given the disputed and confused factual record before us. *Burkes v. Klauser*, 185 Wis. 2d 308, 328, 517 N.W.2d 503 (1994) ("[I]f there are issues of disputed fact upon which immunity turns,. . .the case should proceed to

trial."); *Baxter v. DNR*, 165 Wis. 2d 298, 303–04, 477 N.W.2d 648 (Ct. App. 1991); *Bass v. Robinson*, 167 F.3d 1041, 1051 (6th Cir. 1999).

¶ 60. Our decision does not mean that this claim cannot ultimately be disposed of on the grounds of qualified immunity. A denial of summary judgment does not preclude a party from raising the issue at trial. *Burkes*, 185 Wis. 2d at 329.

## IV. FAILURE TO PROVIDE MEDICAL ATTENTION

¶ 61. The defendant-officers also moved for summary judgment on Robinson's claim that they denied him medical assistance. Robinson's claim in this regard exists only as to the individual officers. The circuit court granted summary judgment on Robinson's claim against the City, and Robinson did not appeal this ruling. Robinson claims that given what the officers knew at the time of his arrest and subsequent confinement, they should have transported him to a hospital.

¶ 62. The defendants' summary judgment challenge to Robinson's claim requires us to identify the right allegedly violated. Both parties suggest that our focus should be on the Eighth Amendment and the deliberate indifference standard. *Estelle v. Gamble*, 429 U.S. 97 (1976).[11] However, the Eighth Amendment protection applies to convicted prisoners. *Ingraham v.*

---

[11] In *Estelle v. Gamble*, 429 U.S. 97 (1976), the Court established the standard for a constitutional violation arising from inadequate medical treatment of prisoners. A prisoner in such actions has a valid claim for violation of the Eighth Amendment where the prisoner alleges "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106.

*Wright*, 430 U.S. 651, 671–72 n.40 (1977). Because Robinson had not yet been convicted at the time he was allegedly denied medical assistance, he should be properly considered a pretrial detainee.

¶ 63. In *City of Revere v. Massachusetts General Hospital*, 463 U.S. 239, 244 (1983), the Supreme Court established that a pretrial detainee who has been injured is entitled to receive medical attention. While the scope of this due process protection was not defined with specificity in *City of Revere*, the Court did state that such a pretrial detainee's rights "are as least as great as the Eighth Amendment protections available to a convicted prisoner." *Id.* (citations omitted). The Supreme Court has not further explored the issue of the due process right of a pretrial detainee to receive medical care,[12] and no Wisconsin court has yet addressed the issue.

¶ 64. We do not attempt to define the scope of that right in its entirety today, but we do follow many of the courts that have addressed the issue and require that for there to be a constitutional violation the officers must have been inattentive to an injury or the

_____

The court of appeals and the defendants also rely to some degree on *Brownelli v. McCaughtry*, 182 Wis. 2d 367, 514 N.W.2d 48 (Ct. App. 1994). However, we find *Brownelli* inapposite because it concerns the duty owed to prisoners and is grounded in negligence principles rather than constitutional principles.

[12] Since *City of Revere v. Massachusetts General Hospital*, 463 U.S. 239 (1983), the Court has twice, without further defining a pretrial detainee's rights, reiterated its position that a pretrial detainee's rights are at least as great as a prisoner's. *County of Sacramento v. Lewis*, 523 U.S. 833, 849–50 (1998); *City of Canton v. Harris*, 489 U.S. 378, 388 n.7 (1989).

signs of an injury that was more than merely a minor injury. *See, e.g., Brownell v. Figel*, 950 F.2d 1285, 1291 (7th Cir. 1991) ("[T]he due process clause does not require hospital care for minor injuries.").[13] Viewing the evidence in the light most favorable to Robinson, he

[13] *See also Barrie v. Grand County, Utah*, 119 F.3d 862, 868 (10th Cir. 1997); *Murphy v. Walker*, 51 F.3d 714, 719 (7th Cir. 1995) ("A pretrial detainee must be provided with medical treatment if a reasonable officer would have considered the injury serious."); *Kost v. Kozakiewicz*, 1 F.3d 176, 185 (3d Cir. 1993); *McNally v. Prison Health Servs.*, 46 F. Supp. 2d 49 (D. Me. 1999) (describing First Circuit rule). These cases require that there be deliberate indifference to serious medical needs to rise to the level of a constitutional violation. This describes the scope of the protection provided to a convicted prisoner under the Eighth Amendment. *Estelle*, 429 U.S. at 104. The parties, relying to a great extent on *Brownell v. Figel*, 950 F.2d 1285 (7th Cir. 1991), assert that this is the controlling standard. While the several circuits listed above have adopted the Eighth Amendment standard in the Fourteenth Amendment context, the Supreme Court has specifically left open the possibility that the rights of a pretrial detainee in this regard are broader than those of convicted prisoners. *City of Revere*, 463 U.S. at 244.

Because we can decide this case on the narrow grounds of Robinson's failure to sustain a claim based on more than minor injuries, we cite *Brownell* and the other federal court of appeals cases for the much narrower proposition that inattention to a minor injury or the signs thereof does not amount to a constitutional violation. We leave for another day the matter of defining further the degree of injury needed for there to be a constitutional violation and the question of whether the inattention must rise to the level of deliberate indifference. *See Boswell v. Sherburne County*, 849 F.2d 1117, 1121 (8th Cir. 1988) (declining to define scope of pretrial detainee's rights in comparison to rights of convicted prisoners in light of Supreme Court's statements *City of Revere* when it was unnecessary to resolution of case).

is not entitled to proceed past summary judgment with this claim because he presents no evidence that the officers were inattentive to an injury or the signs thereof that is anything more than a minor injury.

¶ 65. The only injuries of which the officers knew or had reason to know were the effects of the pepper spray and the cuts or scrapes to Robinson's face. Robinson does not deny that the rescue squad provided medical attention for the effects of the pepper spray. Minutes later Robinson claims to have requested to go the hospital because of the effects of the pepper spray. However, despite Robinson's claims, the effects of the pepper spray proved to be nothing more than minor and temporary. Robinson remained ambulatory and did not complain further of the injury in the initial few hours of confinement before the effects of the spray subsided.

¶ 66. Robinson has presented no facts that suggest the injuries to his face were causing him pain or were the source of the complaints to the officers. Indeed, he recalls that several hours after the incident only the pepper spray was causing him pain. As such, we can find no evidence that suggests these injuries were anything other than minor.

¶ 67. The focus of Robinson's argument is his contention that upon informing the officers of his kidney condition and high blood pressure, the officers should have sought medical attention. However, the summary judgment materials do not demonstrate that Robinson was suffering from or complaining of the effects of these conditions at any point during the arrest or his subsequent confinement. In his deposition he describes no pain or problems caused by or associated with either condition. Robinson's statement merely informed the officers of a preexisting condition.

There was no injury related to these conditions. Merely stating that one has a preexisting medical condition does not warrant medical care absent some indication that those conditions require treatment at that time.

¶ 68. Robinson alleges that a boot-print shaped bruise developed on his back from the placement of Schumitsch's foot. Yet, nothing in the summary judgment materials demonstrates that the officers had reason to know of this injury, and therefore they cannot be said to have been inattentive to it. Similarly, Robinson has neither argued nor presented any evidence suggesting that the officers were aware of his alleged unconsciousness.

¶ 69. Finally, Robinson contends in his brief that he requested that he be transported to a hospital due to a shoulder injury. There is no mention of any such request in Robinson's deposition or elsewhere in the summary judgment materials. Nor can we find any indication that Robinson complained of a shoulder injury or exhibited the signs of such an injury at the time when the defendant-officers would have been required to obtain medical assistance. Again, Robinson testified that by the time he was at the police station, only the effects of the pepper spray were causing him pain.

■■■

¶ 70. In sum, we have construed the inferences drawn from the evidence in Robinson's favor and conclude that he has presented no evidence suggesting that the officers were inattentive to an injury or the signs of an injury, other than minor injuries. His claim, therefore, cannot survive the defendants' motion for summary judgment.

## V.

¶ 71. In conclusion, we determine that under the facts of this case it is proper to grant summary judgment dismissing Robinson's claim of failure to provide medical attention. However, the circuit court correctly denied summary judgment on the claim of excessive use of force. Robinson was not required to submit an affidavit of an expert witness to avoid summary judgment on his excessive use of force claim. In addressing the defendants' defenses to that claim, we conclude that neither issue preclusion nor the doctrine of *Heck v. Humphrey* presents a bar to that claim, and we determine that Robinson has not waived any portion of that claim. We also conclude that the defendant-officers are not entitled to dismissal of the claim on the basis of qualified immunity. Accordingly, we reverse the court of appeals and remand the cause to the circuit court for further proceedings.

*By the Court.*—The decision of the court of appeals is reversed and the cause is remanded to the circuit court.