[No. C067636. Third Dist. July 5, 2012.]

STEVEN RICHARD ALLGOEWER, Plaintiff and Appellant, v.
CITY OF TRACY et al., Defendants and Respondents.

COUNSEL

Pacheco & Somera and Charles A. Pacheco for Plaintiff and Appellant.

Low, Ball & Lynch, Dale L. Allen and Michael T. Beuselinck for Defendants and Respondents.

OPINION

**ROBIE, J.**—Plaintiff Steven Richard Allgoewer sued the City of Tracy and two of its police officers for (among other things) using excessive force in arresting him. Before Allgoewer finished putting on his evidence at trial, the trial court granted nonsuit on the ground that Allgoewer could not prevail without offering expert testimony on "what force a reasonable law enforcement officer would have used under the same or similar circumstances." On Allgoewer's appeal, we conclude the trial court prejudicially erred in concluding that expert testimony on the issue of reasonable force was required in this case. Accordingly, we will reverse the judgment of dismissal.

## FACTUAL AND PROCEDURAL BACKGROUND

Viewing the evidence in the light most favorable to Allgoewer, the testimony at trial showed that on June 18, 2007, Allgoewer's ex-wife, Leticia Vargas, complained to Officer Nestor Mejia of the Tracy Police Department that Allgoewer had violated a child custody order by failing to return the parties' child to Vargas the day before. When Officer Mejia could not reach Allgoewer by telephone, he drove to Allgoewer's house, where he found Allgoewer gardening in the yard. Officer Mejia engaged Allgoewer in conversation while standing on the sidewalk on the other side of a short fence from Allgoewer. As they spoke, Officer Trevin Freitas joined Officer Mejia on the sidewalk.

Officer Mejia informed Allgoewer of Vargas's complaint, and Allgoewer immediately responded that he had submitted a letter through his lawyer for a 30-day vacation period with the child. After a period of conversation, Allgoewer told the officers he had a draft of the letter inside, and they allowed him to retrieve it. He left the yard through the gate into the backyard, presumably to enter the house through the back door. He then returned with a folder of documents but was unable to provide the officers with a copy of the letter.

Eventually, Officer Mejia went to talk with Vargas, who was parked a block away, about whether she had received the letter Allgoewer claimed to have sent through his attorney. After Vargas told Officer Mejia she had no knowledge of the letter, and a man on the telephone whom she claimed was her lawyer told the officer the same thing, Officer Mejia went back to Allgoewer and relayed that information to him. Allgoewer began to get upset. Officer Mejia told him he was in violation of the custody order and was going to have to give the child up to Vargas. Allgoewer started raising his voice and eventually squatted down to pick up the documents he had brought out of the house, along with the hand rake he had been using to garden. Officer Mejia told Allgoewer to put the rake down because it was making him nervous, but Allgoewer did not comply. He told the officers he was not going to hurt them and told them to "come on in." The officers made their way around the fence into the yard, while Allgoewer started walking toward the backyard gate. Officer Freitas told Allgoewer not to go into the backyard. Allgoewer asked how he was going to get the child if he stayed "out here."

Officer Freitas told Allgoewer to put the rake down or Officer Freitas was going to "Tase" him. Then, without either officer telling Allgoewer he was under arrest, Officer Freitas moved toward Allgoewer, grabbed his right arm, and attempted to kick the hand rake out of his hand. Officer Freitas then drove Allgoewer to the ground with a leg sweep. Officer Mejia rushed in to assist.

Officer Freitas was on Allgoewer's back, applying pressure to the side of Allgoewer's face with the back of his tricep in an effort to get Allgoewer's arm out from under him and to Allgoewer's lower back. Allgoewer told the officers he had a hurt shoulder and some crushed vertebrae, and he yelled in pain, but he refused to comply with Officer Freitas's command to put his arms behind his back. Meanwhile, Officer Mejia, who was yelling at Allgoewer to give Officer Mejia his hand, reached down and tried to pull Allgoewer's hand back. When that did not work, Officer Mejia applied his Taser to Allgoewer twice. After the second time, Officer Freitas was able to get Allgoewer's left hand behind his back, and Allgoewer then put his right hand behind his back as well.

The officers arrested Allgoewer for violating a court order, brandishing a weapon, and resisting arrest.

Allgoewer claimed that as a result of the incident, he suffered a broken wrist, torn rotator cuff muscles, and a torn bicep.

In July 2008, Allgoewer commenced this action by filing a complaint against the City of Tracy, Officers Freitas and Mejia, and others not relevant here for deprivation of his constitutional rights and various state law torts. Among other things, Allgoewer alleged that the degree of force the officers used in arresting him was unreasonable under the circumstances.

The case came to trial on January 11, 2011. On January 13, the second day of testimony, defendants filed a motion for nonsuit, seeking a ruling from the court at "the close of the case in chief presented by plaintiff." Defendants argued that nonsuit would be appropriate because Allgoewer's case was not going to include "the testimony of an expert witness as to standards of practice and procedure for the defendant police officers, and for the supervisory public employees and entities." In defendants' view, "[w]ithout expert testimony to establish an objective reasonableness standard for the defendant officers' actions, the lay jury will have no evidence from which to assess what actions are characteristic of a reasonable police officer." In other words, defendants contended that the amount of force a reasonable police officer would have used under the circumstances the officers faced was "not within the common knowledge of laypersons," and therefore it was " 'necessary for the plaintiff to introduce expert opinion evidence in order to establish a prima facie case.' " Defendants also argued that nonsuit should be granted to the officers based on qualified immunity because they "would not have been aware of a clearly established constitutional right at the time of the incident regarding Taser use."

At the beginning of the second day of testimony, after Allgoewer's two treating physicians had testified the previous afternoon, Allgoewer's attorney

confirmed that he would be calling the two officers to testify, and then Allgoewer himself, and "that should do it." Defense counsel noted that he had a witness on standby for the afternoon and mentioned that he had faxed "the nonsuit brief" that morning so the court could look at it over lunch.

Officer Freitas testified first, then Officer Mejia. Officer Mejia's testimony continued into the following day. There was some brief discussion of the nonsuit motion before the testimony resumed. Later, during a recess in the testimony, there was further discussion of the motion. Allgoewer's attorney told the court he had anticipated that "this issue would have been done at the end of plaintiff's case" and he told the court he had cases for the court to read. At the conclusion of the argument, the court took the matter under submission, then resumed Officer Mejia's testimony.

Some time later, during defense counsel's cross-examination of Officer Mejia (the officer having been called as an adverse witness by Allgoewer), after defense counsel told the court he had only a few more questions for the officer, the court volunteered that it was "prepared to rule on the pending motion." Without excusing the jury, the court explained that "[t]he mere fact than an expert has not been and won't be called in the case by the plaintiffs is not determinative," but almost immediately thereafter the court found "that without expert testimony on the issue of what force would be reasonably necessary under these circumstances or whether it . . . was excessive here, the jury will not have evidence to determine what force a reasonable law enforcement officer would have used under the same or similar circum-stances." The court also asserted that "although there's no legal requirement under the federal cases that the plaintiff offer expert testimony in order to make a prima facie case, . . . the Court finds that it would be necessary to have that kind of testimony." Accordingly, the court granted the motion for nonsuit and dismissed all causes of action as to all parties. After the jury departed, Allgoewer's attorney pointed out to the court that the causes of action were based on more than just excessive force, and that no expert testimony was necessary to determine whether the officers' entry into the curtilage of Allgoewer's home was lawful. The court noted that counsel had "made a record," and proceedings were adjourned.

On March 15, 2011, Allgoewer filed a notice of appeal "from the judgment entered on or about January 14, 2011," even though no written judgment or order of dismissal had been filed (although there was an unsigned minute order). We subsequently advised Allgoewer's attorney to obtain a written, signed order of dismissal from the trial court, as the unsigned minute order was not appealable. (See Code Civ. Proc., § 581d; *Milton Meyer & Co. v. Curro* (1966) 239 Cal.App.2d 480, 482–483 [48 Cal.Rptr. 812].) A signed order of dismissal was subsequently filed in the action on April 26, 2012. Accordingly, this appeal is timely. (See Cal. Rules of Court, rule 8.104(d).)

## DISCUSSION

On appeal, Allgoewer contends the trial court erred in granting the motion for nonsuit because the jury did not need expert testimony to decide whether the officers used excessive force on him. We agree.

I

*The Law of Nonsuit*

"Only after, and not before, the plaintiff has completed his or her opening statement, or after the presentation of his or her evidence in a trial by jury, the defendant, without waiving his or her right to offer evidence in the event the motion is not granted, may move for a judgment of nonsuit." (Code Civ. Proc., § 581c, subd. (a).)

"A defendant is entitled to nonsuit if the trial court determines the evidence presented by the plaintiff is insufficient as a matter of law to permit a jury to find in her favor. The court may not weigh the evidence or consider the credibility of witnesses. Instead, it must accept the evidence most favorable to the plaintiff as true and disregard conflicting evidence. The plaintiff's evidence must be given all the value to which it is legally entitled, including every legitimate inference that may be drawn in the plaintiff's favor. A mere 'scintilla of evidence' is not enough, however. There must be substantial evidence creating a conflict for the jury to resolve. In reviewing a grant of nonsuit, we follow the same rules requiring the evidence to be evaluated in the light most favorable to the plaintiff and least favorable to the defendant. All presumptions, inferences, and doubts are resolved against the defendant. We may not affirm, unless judgment for the defendant is required as a matter of law." (*Burlesci v. Petersen* (1998) 68 Cal.App.4th 1062, 1065 [80 Cal.Rptr.2d 704].)

II

*The Need for Expert Testimony on Excessive Force*

"Generally, the opinion of an expert is admissible when it is '[r]elated to a subject that is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact . . . .' " (*PM Group, Inc. v. Stewart* (2007) 154 Cal.App.4th 55, 63 [64 Cal.Rptr.3d 227], quoting Evid. Code, § 801, subd. (a).) "If the matter in issue is one within the knowledge of experts *only* and not within the common knowledge of laymen, it is necessary for the plaintiff to introduce expert opinion evidence in order to establish a

prima facie case." (*Miller v. Los Angeles County Flood Control Dist.* (1973) 8 Cal.3d 689, 702 [106 Cal.Rptr. 1, 505 P.2d 193].) That is usually the case, for example, in medical malpractice actions. "Because the standard of care in a medical malpractice case is [generally] a matter 'peculiarly within the knowledge of experts' [citation], expert testimony is required to 'prove or disprove that the defendant performed in accordance with the standard prevailing of care' . . . ." (*Johnson v. Superior Court* (2006) 143 Cal.App.4th 297, 305 [49 Cal.Rptr.3d 52].) This rule does not apply, however, when "the negligence is obvious to a layperson." (*Ibid.*) " 'Where the jury is just as competent as the expert to consider and weigh the evidence and draw the necessary conclusions, then the need for expert testimony evaporates.' " (*People v. Torres* (1995) 33 Cal.App.4th 37, 47 [39 Cal.Rptr.2d 103].)

Here, defendants took the position—and the trial court agreed—that the "standard of conduct" in an excessive force case is like the standard of care in a medical malpractice case in that, in all but the most egregious cases, the degree of force a reasonable police officer would use under a particular set of circumstances is peculiarly within the knowledge of experts. In the trial court, defendants offered no authority directly supporting their position, and that omission continues on appeal. Although we have not found any California authority directly on point, the out-of-state authorities we have discovered, which we find persuasive, do not support defendants' position.

■ Before addressing those authorities, however, we pause to examine the "constitutional standard [that] governs a free citizen's claim that law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other 'seizure' of his person." (*Graham v. Connor* (1989) 490 U.S. 386, 388 [104 L.Ed.2d 443, 450, 109 S.Ct. 1865].) In *Graham*, the United States Supreme Court explained that "such claims are properly analyzed under the Fourth Amendment's 'objective reasonableness' standard, rather than under a substantive due process standard." (*Ibid.*) As the court explained, "Because '[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application,' . . . its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." (*Id.* at p. 396 [104 L.Ed.2d at p. 455], citation omitted.) Furthermore, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. . . . The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." (*Id.* at pp. 396–397 [104 L.Ed.2d at pp. 455–456].)

Under *Graham*, then, the question in a case such as this is whether the amount of force the officers used in making the arrest was objectively unreasonable given the circumstances they faced. Whether expert testimony is necessary to establish that a particular amount of force was objectively unreasonable is not a question that has been addressed in any California case brought to our attention. Several out-of-state authorities, however, provide guidance on this issue.

In *Kopf v. Skyrm* (4th Cir. 1993) 993 F.2d 374, a federal district court "ruled *in limine* that two expert witnesses [the plaintiff] expected to call" to testify regarding the use of police dogs and slapjacks "would not be permitted to testify" because "the excessive force standard—'objective reasonableness'—is comprehensible to a lay juror and . . . expert testimony would therefore not assist the trier of fact." (*Id.* at pp. 376, 378, fn. omitted.) The circuit court concluded that ruling was an abuse of discretion. (*Id.* at p. 378.) As the circuit court explained, while "the 'objective reasonableness' standard may be comprehensible to a lay juror," "any 'objective' test implies the existence of a standard of conduct, and where the standard is not defined by the generic—a reasonable *person*—but rather by the specific—a reasonable *officer*—it is more likely that [the] line between common and specialized knowledge has been crossed." (*Ibid.*) The court was careful to caution, however, that "a blanket rule that expert testimony is generally admissible in excess force cases would be just as wrong as a blanket rule that it is not. [¶] The facts of every case will determine whether expert testimony would assist the jury. Where force is reduced to its most primitive form—the bare hands—expert testimony might not be helpful. Add handcuffs, a gun, a slapjack, mace, or some other tool, and the jury may start to ask itself: what is mace? what is an officer's training on using a gun? how much damage can a slapjack do? Answering these questions may often be assisted by expert testimony." (*Id.* at pp. 378–379.) The court went on to conclude that the plaintiff's experts should have been allowed to testify about "[h]ow to train and use a police dog" and about "the prevailing standard of conduct of the use of slapjacks." (*Id.* at p. 379.)

*Thompson v. City of Chicago* (7th Cir. 2006) 472 F.3d 444 is an example of a case in which expert testimony on the use of force was deemed *not* admissible. In *Thompson*, a police officer involved in subduing a suspect who had led officers on a high-speed automobile pursuit employed a chokehold while other officers handcuffed the suspect. (*Id.* at pp. 447–448.) The suspect died as a result of asphyxia due to the chokehold. (*Id.* at p. 448.) In the suit that followed, brought by the suspect's wife and mother, the district court ruled in limine that the plaintiffs could not introduce "the opinion testimony of officers from the [Chicago Police Department's] Office of Professional Standards concerning their investigation into [the suspect's] death"— specifically, their "expert testimony . . . regarding whether [the officer who

employed the chokehold] violated the Fourth Amendment by using excessive force when apprehending [the suspect]." (*Id.* at pp. 446, 449, 457.) The district court excluded the proposed expert testimony not because the court believed the testimony would be unhelpful to the jury, but rather because the court believed the probative value of the evidence was substantially outweighed by the danger of unfair prejudice. (*Id.* at p. 457.) The circuit court affirmed this ruling, noting that "[t]he jury, after having heard all of the evidence presented, was in as good a position as the experts to judge whether the force used by the officers to subdue [the suspect] was objectively reasonable given the circumstances in this case. Introducing two experts to testify that [the officer who used the chokehold] used excessive force would have induced the jurors to substitute their own independent conclusions for that of the experts." (*Id.* at p. 458.)

*Kopf* stands for the proposition that expert testimony can be admissible on the issue of reasonable force. *Thompson* stands for the proposition that it is not always admissible. Both of these cases indirectly support the proposition that expert testimony is not *required* in an excessive force case. *Robinson v. City of West Allis* (2000) 239 Wis.2d 595 [619 N.W.2d 692] directly stands for that proposition.

In *Robinson*, the trial court denied a motion for summary judgment as to the plaintiff's claim that police used excessive force during his arrest, but the state court of appeals reversed, holding that the plaintiff could not sustain his claim "because he did not proffer an affidavit of an expert countering that offered by the defendants." (*Robinson v. City of West Allis, supra,* 619 N.W.2d at p. 695.) The Wisconsin Supreme Court reversed the court of appeals' decision, "reject[ing] a categorical requirement of expert testimony in excessive use of force cases" and concluding that the plaintiff "was not required to submit an affidavit of an expert to avoid summary judgment on his excessive use of force claim" because "determinations of excessive use of force are not, in general, beyond the realm of ordinary experience and lay comprehension . . . ." (*Id.* at pp. 695, 699.)

In explaining its conclusion, the court noted that " 'requiring expert testimony rather than simply permitting it represents an extraordinary step, one to be taken only when "unusually complex or esoteric issues are before the jury." ' " (*Robinson v. City of West Allis, supra,* 619 N.W.2d at p. 699.) The court continued as follows: " 'What amounts to reasonable force on the part of an officer making an arrest usually depends on the facts in the particular case, and hence the question is for the jury. The reasonableness of the force used must be judged in the light of the circumstances as they appeared to the officer at the time he acted, and the measure is generally considered to be that which an ordinarily prudent and intelligent person, with

the knowledge and in the situation of the arresting officer, would have deemed necessary under the circumstances.' " (*Id.* at p. 700.) "We cannot at once emphasize the jury's responsibility for applying the standard of reasonableness and also claim that the issue is beyond the jury's comprehension. Requiring an expert as a prerequisite to a finding of use of excessive force would essentially remove from the jury the task of applying standards of reasonableness and replace it with the task of evaluating the testimony of the parties' experts. [¶] . . . Just as the facts of each case dictate the reasonableness inquiry, so too should they dictate whether expert testimony is needed in a given case." (*Ibid.*)

"Having rejected a per se requirement of expert testimony," the Wisconsin Supreme Court then proceeded to "decide whether expert testimony [wa]s needed in th[e] case" before it. (*Robinson v. City of West Allis, supra,* 619 N.W.2d at p. 700.) The court explained that "[w]hile there may be cases in which the subtleties of police procedure and practice justifying a particular use of force are so far removed from the comprehension of a lay jury as to necessitate an expert, this is not one of them." (*Ibid.*) "One need not be an expert to determine whether a reasonable use of force in effectuating an arrest includes smashing an arrestee's face to the ground or landing a punch to the side of his head. Similarly, a jury does not need the opinion of an expert to determine whether a police officer acted reasonably in picking up a handcuffed individual by the belt and dropping him to the ground and then standing upon him. The difficulty a jury will have with this case lies not in applying the reasonableness standard to the facts as it finds them but in untangling the disputed facts presented by the parties." (*Id.* at p. 701.)

■ We find the analysis of the Wisconsin Supreme Court in *Robinson* persuasive. The fact that (as defendants note) "[t]he average layperson does not have training or experience in police practices and procedures, and does not have experience with the tools, methods or theories of implementing those practices and procedures" does not mean that expert testimony is required for a jury to determine whether a particular amount of force was unreasonable under the circumstances of a particular case. Indeed, defendants admit as much when they acknowledge (as the trial court did) that "[e]xpert testimony is not necessarily required for excessive force . . . cases." Eschewing a per se rule, like the court in *Robinson* did, defendants argue that expert testimony was necessary in *this* case because "the instant case involved specialized training and experience regarding police practices and procedures." But beyond that vague assertion, defendants offer no explanation of why or how that was so. In the absence of such an explanation, we are left to conclude there is nothing about the particular use of force in this case that was so far removed from the comprehension of a lay jury as to necessitate expert opinion testimony on the applicable standard of conduct or on what amount of

force was reasonable under the circumstances that confronted the officers who arrested Allgoewer. The trial court erred in concluding otherwise.[1]

## III

### *Qualified Immunity*

Defendants contend that regardless of whether expert testimony was needed on the issue of excessive force, the nonsuit in favor of Officer Mejia should be affirmed on the basis of qualified immunity (which was an alternate basis for the motion for nonsuit) "[b]ecause the incident occurred at a time where a reasonable officer could have made a reasonable mistake in law with regard to Taser use." According to defendants, "[t]wo Ninth Circuit panels have concluded that the law regarding Tasers was not sufficiently established to warrant denying qualified immunity" and because "an officer in Officer Mejia's position could have made a reasonable mistake of law regarding the use of the Taser under the circumstances he confronted," "Officer Mejia was thus entitled to qualified immunity."

In reply, Allgoewer points out that defendants' qualified immunity argument "focus[es] only on the use of the taser by Officer Mejia," when "the force applied involved significantly more actions than the application of the taser." Under these circumstances, even if we were to agree with defendants that Officer Mejia was entitled to qualified immunity from any liability for his use of the Taser on Allgoewer, defendants have failed to explain how that conclusion would support a judgment of nonsuit in Officer Mejia's favor given that Officer Mejia's use of the Taser was not the only force applied by Officer Mejia during the encounter. In other words, defendants have failed to explain why Allgoewer could not have prevailed on his excessive force claim against Officer Mejia even if Officer Mejia is entitled to qualified immunity for his use of the Taser. Accordingly, defendants' qualified immunity argument does not provide a substantial alternate basis for upholding the nonsuit in favor of Officer Mejia.[2]

---

[1] Because we conclude the trial court erred in concluding expert opinion testimony was necessary for Allgoewer to prevail on his claim of excessive force, we need not address Allgoewer's alternate argument that the court erred in ruling on the motion for nonsuit before he had completed his case-in-chief.

[2] Defendants filed a motion to strike allegedly "defective" portions of Allgoewer's opening brief. We deferred decision on that motion pending calendaring and assignment of the panel. Because the portions of the brief defendants contend were defective have played no role in our decision, we deny the motion to strike.

## DISPOSITION

The judgment is reversed. Allgoewer shall recover his costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1).)

Nicholson, Acting P. J., and Mauro, J., concurred.