COURT OF APPEALS
DECISION
DATED AND FILED

July 11, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP2228-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2020CF883

IN COURT OF APPEALS
DISTRICT I

---

STATE OF WISCONSIN,

      PLAINTIFF-RESPONDENT,

  V.

DEANDRE J. BELL,

      DEFENDANT-APPELLANT.

---

APPEAL from an order of the circuit court for Milwaukee County: JONATHAN D. WATTS, Judge. *Affirmed and cause remanded for further proceedings.*

Before Brash, C.J., Donald, P.J., and Dugan, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Deandre J. Bell, charged by the State with two counts of first-degree reckless homicide in the shooting deaths of his sister and her girlfriend, appeals a nonfinal[1] pretrial order of the circuit court precluding him from offering at trial certain expert-type testimony. Specifically, Bell argues that the circuit court erroneously determined that the proffered testimony should be excluded as "extraneous and superfluous" to the jury's consideration of and deliberation on self-defense, use of force, and state of mind issues, among others.

¶2 For the reasons set forth below, we disagree with Bell on this evidentiary matter, agree that the circuit court properly excluded the proposed testimony, and remand this case to the circuit court for further proceedings consistent with this opinion.

## BACKGROUND

¶3 According to the voluntary statement made by Bell to law enforcement immediately after his arrest, Meshala Pabai was his sister, and Aubrianna Lancaster was her girlfriend. During an argument on February 22, 2020 between Bell and Pabai, the latter pushed the former into a living room wall and over the arm of a couch; Pabai also choked Bell and punched him in the head.

¶4 After Pabai walked away, Bell decided to go to his room. Now holding a gun at his side, Bell walked past Pabai's room; Pabai and Lancaster came out of the room, and Pabai then pushed Bell into the refrigerator. Lancaster was standing behind Pabai as she walked toward him.

---

[1] This court granted leave to appeal the order. *See* WIS. STAT. RULE 809.50(3) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

2

¶5      According to his confession, Bell pointed his gun at Pabai's abdomen and "shot an unknown number of times." According to the criminal complaint, law enforcement was dispatched to the home following a telephone call in which the caller reported that her brother shot her and her girlfriend. Upon their arrival at the home, officers discovered Pabai with multiple gunshot wounds to her upper chest; she said that her brother Deandre shot her and Lancaster, and that both Deandre and Lancaster were inside.

¶6      Lancaster was pronounced dead at the scene, and Pabai later died at the hospital. During their on-site investigation, the responding officers found a handgun, an open box of 9mm ammunition, and, in the kitchen, six spent casings. The medical examiner subsequently determined that both Pabai and Lancaster died from multiple gunshot wounds.

*Judicial Proceedings*

¶7      After the State charged Bell with two counts of first-degree reckless homicide in the shooting deaths of Pabai and Lancaster, Bell made several pretrial filings all substantively related to his position that he had acted in self-defense. In those filings, Bell identified Conrad Zvara as a use-of-force expert in his witness list. The State subsequently filed a motion to exclude Zvara's testimony on the grounds that the requirements of WIS. STAT. § 907.02(1), which establishes the standards for admissibility of expert-type testimony, had not been satisfied. Following briefing on this issue by the parties, the court conducted a pretrial admissibility hearing.

¶8      At that proceeding, the circuit court received into evidence the report that Zvara had authored, along with Zvara's curriculum vitae. The State stipulated to Zvara's qualifications—Zvara was retired from the Milwaukee Police

3

Department and the United States Coast Guard Reserve, and was now employed as an "[e]xpert [w]itness/[c]onsultant" and as an instructor on concealed carry, personal defense, use of force, and firearms safety issues. Zvara's report explained that he had reviewed police reports, interview videos, the medical examiner's reports, and photographs of the crime scene; he also conducted an interview of Bell. Zvara had been asked to "discuss and explain the dynamics of deadly force decision making, threat assessment, the reasonableness of multiple shots fired, whether an 'unarmed' attacker can cause death or great bodily harm, and disparity of force for legally armed citizens[.]" The defense had also requested that he apply those principles in the context of the shootings for which Bell was charged.

¶9     In his substantive testimony, Zvara stated that an immediate threat that requires the use of force is properly assessed according to three criteria—ability, opportunity, and jeopardy; Zvara referred to this as the "AOJ triad." He further explained that "ability" means that the aggressor has the power to kill or cripple, that "opportunity" means the aggressor can deliver that power immediately, and that "jeopardy" means that the aggressor's actions or words (or both) will lead any reasonable and prudent person to believe that the aggressor intends to attack immediately. Based on this analytical framework, Zvara testified that Pabai had exhibited all three characteristics or qualities.

¶10    Based on his understanding and rendition of the account of the incident, Zvara concluded that Bell did not start or escalate the altercation and instead attempted to retreat; that Bell's "ability to react and assess [Pabai's] threat against him was badly compromised"; and that there was a disparity of force dynamics between the two. He stated that all of his opinions, offered to a reasonable degree of professional certainty, were not legal conclusions about

whether Bell's actions were reasonable but were instead findings about the presence and absence of various factors that may be relevant in determining whether self-defense was reasonable.

¶11    On cross-examination, Zvara acknowledged that his assessments were based on Bell's own account of what happened—and that his conclusion that Pabai and Lancaster had the physical capacity to harm Bell was similarly premised on what Bell had told him during their interview.[2]

¶12    Importantly, Zvara also testified that the information that he was offering was outside the experience of jurors; he said that "the vast majority of people don't understand concepts of AOJ…. They don't understand the concept of disparity of force. They don't understand why multiple shots might need to be fired to stop even an unarmed aggressor." Similarly, in his report he observed: "Unfortunately, the vast majority of our fellow citizens who make up our jury pools have no idea of the true intricacies of the proper use of deadly force in a very dynamic, fast-moving scenario when defending oneself from a potentially deadly assault."

¶13    Zvara acknowledged that Bell himself could not articulate concepts related to "disparity of force," the "AOJ triad," the need for multiple shots, and the threat of force when attacked with bare hands; he also articulated his belief that Bell could not explain why he acted as he did. That testimony prompted this

---

[2] The account provided by Bell to Zvara in their interview includes some information beyond that described by Bell to law enforcement immediately after his arrest. These additional, specific details may or may not be the subject of a defense presentation at trial, but they do not affect the legitimacy of the circuit court's pretrial decision to exclude Zvara's testimony—or our determination that the circuit court judge did not abuse his discretion in so ruling.

exchange between the State prosecutor and Zvara as to why Zvara was inclined to interpret Bell's actual feelings or real beliefs:

> [The State]: [I]f a person can instinctively understand the danger facing them, why can't a jury instinctively understand that same thing? Why do they need you to interpret what somebody is feeling?
>
> [Zvara]: Unless you're there and experiencing it yourself, you need—you don't understand what happened. You need to be able to articulate, to explain, to go into detail on all of the things that I've mentioned.
>
> And I have yet to find anyone in any of my classes, which is made of citizens, the same people that make up our juries, I have yet to find a single person that can explain to me disparity of force, AOJ, the need for extra shots, what happens if somebody turns before I stop shooting, all things of that nature because they base their knowledge on television and movies and the media, where are—they're fairy tales, basically.

¶14     In the end, Zvara acknowledged that he could not offer evidence as to the subjective element of self-defense and that members of the jury are empowered to decide "what is reasonable." He also agreed that concepts like "disparity of force" and the "AOJ triad" were not factors, terms, or standards recognized in the trappings of Wisconsin's self-defense law. When asked to opine that "Bell's actions were not unreasonable," Zvara replied, "That's correct."

¶15     Based upon this testimony, the circuit court concluded that Zvara's opinion testimony and his exposition testimony must be excluded from the evidentiary presentation to the jury. While acknowledging that WIS. STAT. § 907.04 allows an expert to offer an opinion that embraces an ultimate issue, the circuit court concluded that Zvara's various "factors and concepts [regarding the use of force] inject confusing and extraneous information" that would not prove helpful to the trier of fact. Among other considerations, the circuit court found

that Zvara's construct of a "reasonable person" was different from the construct of a "reasonable person" as defined in Wisconsin's standard jury instructions—leading to the result that his testimony would be "extraneous and superfluous."

¶16    Finally, the circuit court noted that expert testimony about legal matters is inadmissible; that the established factors appropriately invoked to assess the legitimacy of exposition testimony weigh against the Zvara presentation; and that the applicable jury instructions on self-defense relevant to the circumstances of this case fully and satisfactorily define the concept. Notably, the circuit court rejected Zvara's contention that jurors have neither the experiential insight nor the intellectual capacity to evaluate the facts, understand the law, and apply the latter to the former; the court observed that jurors have "sufficient common sense and experience to do their job."

¶17    Subsequently, Bell petitioned for leave to appeal the circuit court's nonfinal, pretrial order excluding Zvara's testimony, and, over the opposition of the State, we granted that request for appellate review.

## DISCUSSION

### *Standards for Admissibility of Expert Testimony*

¶18    It has long been settled that the decision to admit or exclude the testimony of a proffered expert rests within the discretion of the circuit court. ***State v. Dobbs***, 2020 WI 64, ¶27, 392 Wis. 2d 505, 945 N.W.2d 609. It is equally settled that an appeals court reviews the determination of the circuit court under an erroneous exercise of discretion standard and, to that end, "will not reverse a circuit court's decision if the decision 'had a reasonable basis,' and 'was made in

accordance with accepted legal standards and in accordance with the facts of the record." *Id.*

¶19 Consistent with this highly deferential standard, this court "will search the record for reasons supporting the [circuit] court's decision, and [it] will sustain a ruling even where [it disagrees,] so long as appropriate discretion was exercised." *State v. Hogan*, 2021 WI App 24, ¶26, 397 Wis. 2d 171, 959 N.W.2d 658. In this undertaking, we do not ask whether we would have admitted the evidence or whether we agree with the circuit court's ruling. *State v. Chitwood*, 2016 WI App 36, ¶30, 369 Wis. 2d 132, 879 N.W.2d 786.

¶20 WISCONSIN STAT. § 907.02(1) provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise, if the testimony is based upon sufficient facts or data, the testimony is the product of reliable principles and methods, and the witness has applied the principles and methods reliably to the facts of the case.

Applying the language and the meaning of this section, the circuit court serves as a gatekeeper, ensuring that "the expert's opinion is based on a reliable foundation and is relevant to the material issues." *State v. Giese*, 2014 WI App 92, ¶18, 356 Wis. 2d 796, 854 N.W.2d 687. The unmistakable goal of the circuit court is to "prevent the jury from hearing conjecture dressed up in the guise of expert opinion." *Id.*, ¶19.

¶21 Expert testimony may be admissible if it will "assist the trier of fact to understand the evidence or to determine a fact in issue[.]" WIS. STAT. § 907.02(1). This section codifies the touchstones articulated by the United States

Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S 579 (1993), setting the contemporary standards for admissibility of scientific expert testimony and imposing upon circuit courts the responsibility to ensure "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Id.* at 584-597.

¶22    Those determinations include whether:  (1) "the scientific, technical, or other specialized knowledge will assist the [jury] to understand the evidence" or determine a fact at issue; (2) the expert is qualified "by knowledge, skill, experience, training, or education"; (3) the testimony is "based upon sufficient facts or data"; (4) the testimony is predicated on "reliable principles and methods"; and (5) the witness reliably applied those principles and methods to the facts of the case. *State v. Jones*, 2018 WI 44, ¶¶7, 29, 381 Wis. 2d 284, 911 N.W.2d 97; *see also Dobbs*, 392 Wis. 2d 505, ¶42.

¶23    Under this structure, the proponent of the evidence bears the burden of proving its admissibility by a preponderance of the evidence. *State v. Bucki*, 2020 WI App 43, ¶45, 393 Wis. 2d 434, 947 N.W.2d 152.  And, even if the proponent satisfies the criteria of WIS. STAT. § 907.02(1), nothing in its text mandates the admission of the testimony; indeed, "its language is permissive rather than mandatory[.]" *State v. Stephenson*, 2020 WI 92, ¶21 n.9, 394 Wis. 2d 703, 951 N.W.2d 819.

¶24    Stated differently, if the admissibility standards of WIS. STAT. § 907.02 are satisfied, the circuit court still retains its discretion to exclude evidence under WIS. STAT. § 904.03, which provides:  "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by

considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *See Bucki*, 393 Wis. 2d 434, ¶46.

¶25    Finally, it is instructive here to identify and acknowledge the important difference between exposition testimony—that is, the rendition of an educational lecture or academic dissertation on scientific or other principles relevant to the case—and opinion testimony; the former may be permissible under WIS. STAT. § 907.02(1), but the latter is not, as explained in *Dobbs*:

> For example in this case, if [the expert] applied the principles and methods to the facts of the case, he would be giving an opinion on whether or not Dobbs's dispositional factors combined with the police interrogation techniques could have resulted in Dobbs falsely confessing. It is important to recognize that if [the expert] offered such an opinion, it would invade the province of the fact[-]finder as the sole determiner of credibility…. Even if [the expert] had simply been asked whether any of the factors he described in his exposition testimony related to Dobbs's case, his response would be offering his view about whether his exposition testimony relates to the particular facts in Dobbs's case. This is the very definition of an opinion.

*Id.*, 392 Wis. 2d 505, ¶36 n.18.

*Exclusion of the Expert Testimony*

¶26    Both explicitly and implicitly throughout his hearing testimony and in his written report, Zvara moves between exposition and opinion, effectively crossing the boundaries between the two and, in so doing, expressly invades the assigned province of the jury as fact-finder while not providing anything of value to its deliberation. In writing, Zvara is clear and unmistakable in his purpose, concluding with this mission statement: "I would like to relate Mr. Bell's decision

to use deadly force to the various aspects I have pointed out in the preceding pages of this report."

¶27     Orally, Zvara affirms the same goal; when (as noted above) he is quizzed by the State as to whether he "wish[es] to testify that in [his] opinion, Mr. Bell's actions were not unreasonable," he responds, "That's correct." Understanding clearly the content and evaluating properly the objective of this expert testimony, the circuit court rightly concluded that Zvara should be precluded from offering opinion and exposition testimony during the trial.

¶28     This court has previously held that an expert should not be permitted to offer conclusions about a defendant's actual beliefs at the time of the offense, about the reasonableness of those beliefs, or about the defendant's state of mind before, during, and after the criminal act. *State v. Richardson*, 189 Wis. 2d 418, 426, 525 N.W.2d 378 (Ct. App. 1994). Yet, this is precisely what Zvara means to do—soliciting and codifying Bell's account of the crime and then, because Bell himself is (according to Zvara) unable to articulate effectively his actual intent, substituting Zvara's own version of that.

¶29     As the circuit court observed, Zvara has neither the qualifications nor the ability to discern Bell's state of mind during the confrontation and fight with Pabai and, even more importantly, at the time of Bell's decision to shoot her and Lancaster. Zvara is likewise not competent to testify about what Bell might

have had in mind, Zvara's various self-defense constructs, including the "AOJ triad," "multiple shots," and "disparity of force" notions, among others.[3]

¶30　This court, like the circuit court, similarly dismisses Zvara's construct of a "reasonable person"—not only because it is fundamentally at odds with the well-established jury instructions that define the concept rationally and accessibly but, as before, its endorsement here would tend to remove from the trier of fact the independent, deliberative assignment given to it.  As aptly voiced in *State v. Dalton*, 98 Wis. 2d 725, 731, 298 N.W.2d 398 (Ct. App. 1980), the "vice [inherent in Zvara's presentation] is that it is clothed with the seeming scientific knowledge of an expert and thus deceives the jury into believing that it is entitled to deference and consideration which is unsupported and unwarranted."

¶31　Issues strikingly akin to those presented by this petition were addressed by the court in *State v. Ochoa*, 2022 WI App 35, ¶¶31 & 38-40, 404 Wis. 2d 261, 978 N.W.2d 501 in which Zvara's expertise was rejected by both the trial and appellate courts.  Among other concerns, Zvara's proffered testimony relied on the opinion of another expert who was found unreliable; even more tellingly, the circuit court affirmed the capacity and competence of the jury to wrestle with and decide on pivotal questions, absent assistance delivered in a package of abstractions:

> Mr. Zvara's observations aren't relevant to those of the defendant and whether he was reasonable in his thoughts and action.  The jury needs to consider the defendant's

---

[3] In fact, this record—including a reasonably clear and coherent statement of admission by Bell shortly after the crime—suggests that Bell might in fact be fully able to articulate what was in his mind.  As the State observes, Bell described plainly and understandably the particular occurrences before, during, and even after the shootings, suggesting that the "substitute" expertise that Zvara seeks to offer is neither appropriate nor necessary.

> thoughts and actions. So testimony about typical use of force situations just isn't relevant…. Zvara focused on use-of-force principles. Here, the jury was tasked with assessing whether [the defendant's] thoughts and actions were unreasonable. The trial court acted reasonably in excluding testimony it found to be both unreliable and irrelevant.

*Id.* (internal quotation marks omitted). The upshot is that the circuit court in Bell's case properly exercised its delegated discretion to find that Zvara's proffered opinion expertise would not assist the trier of fact in understanding the evidence or determining a fact in issue; even more, for the reasons set forth above, the testimony would likely prove to be extraneous and superfluous, perhaps even prompting confusion of the issues and affirmatively misleading the jury. *See Bucki*, 393 Wis. 2d 434, ¶46.

¶32 All of this opinion-specific analysis applies with equal validity and strength to the related question of whether Zvara's proposed expositional testimony should be admitted. In *Dobbs*, the Wisconsin Supreme Court adopted four factors to be met before this type of expertise is properly presented to a jury—namely, whether the expert is qualified; whether the testimony will address a subject matter on which the factfinder can be assisted; whether the testimony is reliable; and whether the testimony will "fit" the facts of the case. *Id.*, 392 Wis. 2d 505, ¶43.

¶33 Importantly, the *Dobbs* court explained:

> "[E]xpert testimony is helpful to the jury," or fits, "if it concerns a matter beyond the understanding of the average person, assists the jury in understanding facts at issue, or puts the facts in context." … Establishing the fit of exposition testimony is particularly important because, unlike opinion testimony, exposition testimony does not in and of itself explicitly connect the witness's expertise to the particular facts of the case.

*Id.*, ¶¶43-44. This so-called connecting of a "bridging" mandate is especially problematic here for at least two reasons. First, as noted above, none of Zvara's self-defense constructs are reflected in ways explicit or implicit in the instructions that will presumably be provided to the jury. So, as the circuit court observed, the abundant problem for the defense is that the definitions of, for instance, the "AOJ triad" find no footing in the traditional, long-established law of self-defense in Wisconsin.

¶34    Second is the compelling instruction of *Robinson v. City of West Allis*, 2000 WI 126, ¶27, 239 Wis. 2d 595, 619 N.W.2d 692, in which the supreme court declined to require the presentation of an expert's opinion to support a charge of excessive force. In so doing, the court observed that the touchstone for such a claim is "the objective reasonableness of the use of force." *Id.* ¶30.

¶35    Commenting expressly that the decisional issue is one properly entrusted to the jury, the *Robinson* court instructed:

> We believe the approach of our prior case law belies any contention that the matter is necessarily beyond the jury's comprehension…. [W]e cannot at once emphasize the jury's responsibility for applying the standard of reasonableness and also claim that the issue is beyond the jury's comprehension. Requiring an expert as a prerequisite to a finding of use of excessive force would essentially remove from the jury the task of applying standards of reasonableness and replace it with the task of evaluating the testimony of the parties' experts.

*Id.*, ¶¶31-32. We believe that this affirmation of the central, reliable role of the jury is no less applicable in a criminal matter like this one, in which the question of self-defense is at the fore, than in one in which the judgment turns on a determination of excessive force.

¶36 To that same end, exposition testimony of the sort promoted by Bell would run afoul of the guidance of WIS. STAT. § 904.03, prescribing, as noted above, that even relevant evidence may be properly rejected if its probative value is substantially outweighed by a danger of unfair prejudice, confusion of the issues, or misleading the jury—in addition to the possibilities of undue delay, waste of time, or needless presentation of cumulative evidence. While there are several ways in which the incongruity between the proffered Zvara testimony and the actual, established state of the law might be witnessed, the State directs attention to one of the most plausible. The settled law of self-defense incorporates a fundamental principle of proportionality—that is, limiting the amount of force that a defendant can use or threaten to use only to that "necessary to prevent or terminate the interference." WIS JI—CRIMINAL 805.

¶37 Yet on this same issue, Zvara explained that from his perspective, he didn't believe that "the number of shots [was] particularly relevant in this case." Along with all of the bases upon which his opinion testimony is rightly excluded, the prospect of misleading or, at a minimum, confusing the jury on an illustrative ground like this justifies the exclusion ordered by the trial judge.

¶38 In the end, this record is full of grounds upon which this court can and should, in the exercise of its highly deferential review, support that discretionary evidentiary decision. *See **Hogan***, 397 Wis. 2d 171, ¶26. As the gatekeeper for reliable, relevant, and helpful evidence before the jury, the circuit

court here properly declined to permit the introduction of Zvara's opinion and the exposition testimony.[4] *See **Daubert***, 509 U.S. 579 (1993).

## CONCLUSION

¶39 For all of the reasons set forth above and based upon the pretrial record in this matter to date, we conclude that the circuit court appropriately exercised its discretion and correctly decided to exclude the proffered testimony of Bell's expert witness. Accordingly, we affirm and remand this case to the circuit court for further proceedings consistent with this opinion.

*By the Court.*—Order affirmed and cause remanded for further proceedings.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[4] On these same grounds, we can and will dismiss as meritless Bell's argument that, by this evidentiary ruling, he is denied his constitutional right to present a defense. Bell is fully able to present virtually the same information through his own testimony, should he choose to do so, and he has, in any event, failed to meet the standards for a successful constitutional challenge as set forth in *State v. St. George*, 2002 WI 50, ¶¶53-55, 252 Wis. 2d 499, 643 N.W.2d 777. Among other considerations, "there is no constitutional right to present irrelevant evidence." *State v. Hampton*, 207 Wis. 2d 367, 384, 558 N.W.2d 884 (Ct. App. 1996) (citation omitted).