Filed 4/29/25  Arana v. Rudy's Wholesale Corp. CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

|  |  |
|---|---|
| FERNANDO ARANA, | B339876 |
| Plaintiff and Respondent, | |
| v. | (Los Angeles County Super. Ct. No. 21NWCV00797) |
| RUDY'S WHOLESALE CORP. et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Lee W. Tsao, Judge.  Reversed and remanded with directions.

Biggins Law Group, Chad Biggins; Jeff Lewis Law, Jeffrey Lewis and Kyla Dayton for Defendants and Appellants.

Gusdorff Law, Janet Gusdorff; Sandoval Law and Abraham Sandoval for Plaintiff and Respondent.

_____

Fernando Arana worked as a general laborer for Rudy's Wholesale Corp., a company owned by Rodolfo and Teresa Casasola (collectively, Rudy's). Rudy's never required Arana to clock in or record his time; Rudy's likewise failed to track it. After approximately 30 years of employment, and shortly before Rudy's closed its doors, Arana sued for wage and hour violations. He claimed he was not paid minimum wage or for the overtime that he routinely worked, was not provided with meal and rest breaks, and did not receive accurate wage statements as required by law.

Arana moved for summary judgment or in the alternative summary adjudication of each individual cause of action. Rudy's opposed the motion and submitted a declaration from Teresa[1] (Rudy's chief financial officer and Arana's direct supervisor) contesting Arana's claims. The trial court granted summary judgment, relying in significant part on a burden shifting principle that arises when an employer fails to maintain statutorily-required employee time records. (E.g., *Hernandez v. Mendoza* (1988) 199 Cal.App.3d 721 (*Hernandez*).) Pursuant to this principle, when an employee proves that he performed work for which he was not properly compensated, as well as the amount of that work by reasonable inference, the burden shifts to the employer to prove the precise amount of work the employee performed. The trial court found Arana's prima facie showing at the summary judgment stage successfully shifted the burden to Rudy's, and because Rudy's had no records of the hours Arana

_____

[1] Because they share the same surname, we refer to the Casasolas individually by their first names for ease of reference and not out of any disrespect.

worked nor other evidence setting forth those hours in any detail, summary judgment in Arana's favor was required.

This was error. The burden shifting principle set forth in *Hernandez* and similar cases applies once liability is established and governs the calculation of monetary relief. It does not apply to determining the fact of injury prior to calculating damages and penalties owed for that injury. Although Rudy's undoubtedly violated its obligation to provide accurate wage statements, it submitted sufficient evidence establishing triable issues with regard to Arana's claims for overtime, minimum wage, and meal and rest breaks. We therefore reverse and remand for the trial court to enter a new order granting summary adjudication of the fourth cause of action for violation of Rudy's obligation to provide accurate wage statements, and denying summary adjudication as to Arana's remaining causes of action.

## BACKGROUND

### A. Arana's Employment

Rudy's was a wholesale distributor of food and supplies to lunch trucks. It had approximately five employees in addition to Rodolfo and Teresa. Between 1993 and January 22, 2022, Arana worked for Rudy's as a general laborer, performing tasks such as cleaning, loading, delivery driving, and stocking. Arana reported to Teresa and received work assignments from Rodolfo. It is undisputed that Arana did not clock in or otherwise record the hours he worked, nor did Rudy's require him to do so. In January 2022, Rudy's closed following an asset sale.

**B.    Arana Sues Rudy's**

On December 1, 2021, Arana sued Rudy's for wage and hour violations.[2]  On June 8, 2023, Arana filed a first amended complaint (the Complaint), which added Rodolfo and Teresa as defendants.  The Complaint alleged as follows:  Between December 1, 2017 and July 2021, Arana worked 12-hour days, six days a week, and then beginning in July 2021, he worked eight-hour days, Monday through Friday.  At all relevant times, Rudy's paid Arana a gross weekly wage of $420.  However, his pay stubs did not state his hourly wage rate or how many hours he worked per pay period.  Further, Rudy's did not provide Arana with required meal or rest breaks.

The Complaint alleged causes of action for failure to pay all wages, including minimum wage (Lab. Code,[3] §§ 201, 202, 218, 218.5, 1194, 1194.2; first cause of action), to provide meal and rest breaks (§§ 226.7, subd. (c), 512; second and third causes of action), to provide accurate itemized wage statements (§§ 226, 226.3; fourth cause of action), and to pay overtime (§§ 510, 218.5, 1194 et seq.; fifth cause of action).  It further alleged that in committing these violations, Rudy's engaged in unfair and unlawful business practices under the unfair competition law (UCL) (Bus. & Prof. Code, § 17200 et seq.; sixth cause of action).

The Complaint attached a chart from a forensic accountant, Thomas Neches, that calculated Arana's damages.  It asserted that by February 21, 2022, and based on the statewide minimum

---

[2] Arana initially obtained a default judgment for $190,828.81 in damages.  The trial court later granted Rudy's motion to set that judgment aside.

[3] Unspecified statutory references are to the Labor Code.

4

wage, Arana had suffered a total of $190,828.81 in minimum wage and overtime damages, penalties for rest, meal break, and wage statement violations,[4] and prejudgment interest.

## C.      Arana Moves for Summary Judgment

### 1.      *Arana's Motion and Supporting Evidence*

On December 22, 2023, Arana moved for summary judgment or, in the alternative, summary adjudication of each cause of action.  He asserted that Rudy's did not pay him minimum wage and overtime, thereby violating sections 510 and 1197.1, and Industrial Welfare Commission (IWC) Order No. 7.[5] (See Cal. Code Regs., tit. 8, § 11070 [IWC Order No. 7], subds. 3(A), 4(B).)  He observed that Rudy's operated in the City of Los Angeles, and until July 1, 2018, the minimum wage in the city for an employer with 25 or less employees (L.A. minimum wage) was $10.50 per hour.  On July 1, 2018, however, the L.A. minimum wage increased to $12 per hour (above the statewide minimum

---

[4] Although Neches consistently referred to his monetary calculation for missed rest and meal breaks as penalties, compensation for working without a break is in fact premium wages.  (*Naranjo v. Spectrum Security Services, Inc.* (2022) 13 Cal.5th 93, 115-116.)

[5] Arana's motion and appellate briefs cite IWC Order No. 5. However, the Complaint and the trial court's order cite IWC Order No. 7.  Because Rudy's does not argue that the trial court applied an incorrect IWC order, we assume without deciding that IWC Order No. 7 applies.  In any event, as relevant to this appeal, IWC Order Nos. 5 and 7 impose the same duties on employers.  (Compare IWC Order No. 7, subds. 3(A), 4(B), 7(A), 11, 12 with Cal. Code Regs., tit. 8, § 11050, subds. 3(A), 4(B), 7(A), 11, 12.)

wage) and continued to increase every 12 months thereafter through the relevant period and remain above the statewide minimum wage. (L.A.M.C. § 187.02 (C) [setting L.A. minimum wage in July 2019, July 2020, and July 2021 to $13.25, $14.25, and $15, respectively].) Nevertheless, Rudy's continued to pay Arana at a rate of $10.50 per hour.

Arana also argued that Rudy's did not comply with section 226, which imposes penalties on employers for knowingly and intentionally failing to provide accurate wage statements with certain information. (*Id.*, subd. (a).) His wage statements did not include his hourly rate or the number of hours that he worked during the pay period. Rudy's also failed to provide him the minimum rest and meal breaks as required under sections 226.7 and 512 as well as IWC Order No. 7. (IWC Order No. 7, subds. 11, 12.)

Arana further argued that IWC Order No. 7 required Rudy's to keep "[t]ime records showing when the employee begins and ends each work period. Meal periods, split shift intervals and total daily hours worked shall also be recorded. Meal periods during which operations cease and authorized rest periods need not be recorded." (IWC Order No. 7, subd. 7(A)(3).) However, Rudy's did not track when Arana began or ended work or when he took his meal breaks.

Arana submitted evidence that Teresa was Rudy's chief financial officer and treasurer, and that he reported to her. Arana's declaration averred that between December 1, 2017 and June 30, 2021, he worked 12-hour shifts from 4:00 a.m. to 4:00 p.m., Monday through Saturday. Beginning in July 2021, Teresa permitted him to work eight-hour shifts from 4:00 a.m. to 12:00 p.m., Monday through Friday. Between December 1, 2017

6

and January 22, 2022, he received $420 per week, regardless of how many hours he worked.  He further declared that Rudy's never paid him overtime or gave him rest breaks.  He took one 10- to 15-minute lunch break each day.

Canuto Medina, Rudy's security guard between 2019 and 2022, declared that he worked seven days a week, from 4:00 p.m. to midnight.  When he arrived at work at 4:00 p.m., he "saw . . . Arana routinely leave the workplace Monday through Saturday."

Arana submitted 76 of his weekly wage statements from December 21, 2019 through October 29, 2021.[6]  Each statement indicated his weekly gross pay was $420 and that the "[b]asis of pay" was "[s]alaried."  None of the statements included an hourly rate and each listed "0.00" under "hours/units."

Arana also submitted two handwritten receipts, dated December 17, 2021 and January 28, 2022 (the latter dated after Arana stopped working at Rudy's), produced by the company during discovery.  Each receipt was for $180 and appeared to bear Arana's signature.  Although the receipts include a brief narrative description, those descriptions are largely illegible and none of the parties identify what they state.[7]  Arana also supplied an email from Rudy's counsel stating the company had no other documents of this type to produce.

---

[6] Although the wage statements span the period between December 21, 2019 through October 29, 2021, statements for 20 weekly pay periods are missing.  However, the year-to-date wage totals on the available statements indicate that Rudy's paid Arana $420 during the missing weeks.

[7] To the extent they are legible, the receipts appear to contain statements in Spanish that the parties have not sought to translate.

Arana submitted a declaration from Neches setting forth his accounting qualifications and opining that as of April 23, 2024, Arana had sustained $310,322.63 in economic damages. Neches identified three exhibits as relevant to his calculations. Exhibit A listed each category of damages as follows: failure to pay minimum wage ($21,420), failure to pay overtime ($109,656), meal and rest break penalties ($15,882 each), prejudgment interest ($70,882.63), wage statement penalties ($4,000), section 558 penalties ($20,750), and section 1197.1 penalties ($51,850). Exhibit C listed the L.A. minimum wage for the years 2017 through 2023. However, his declaration failed to include exhibit B. Based on Neches's prior submissions (including his analysis attached to the Complaint), it appears that exhibit B was a chart detailing the factors and formulas Neches used to calculate Arana's damages.

Because Rudy's did not maintain time-keeping records, Arana argued the parties' evidentiary burdens were modified under *Hernandez*. He argued that his evidence established that Arana was underpaid and showed by reasonable inference the extent of underpayment. According to Arana, the burden on summary judgment therefore shifted to Rudy's to provide evidence of " 'the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from [Arana]'s evidence.' " (*Hernandez, supra*, 199 Cal.App.3d at p. 727.) If Rudy's " 'fails to produce such evidence, the court may then award damages to [Arana], even though the result be only approximate.' " (*Ibid*.)

2. *Rudy's Opposition and Supporting Evidence*

In opposition, Rudy's argued Arana failed to meet his initial burden in moving for summary judgment and that Rudy's

8

evidence created triable issues. In support, Rudy's relied on a declaration from Teresa, and the December 17, 2021 and January 28, 2022 handwritten receipts.

Teresa declared that Rudy's always paid Arana the minimum wage and did so partially by check and partially in cash. She stated Arana had requested this arrangement to help him qualify for government benefits. Teresa witnessed Arana receiving the cash and signing cash receipts forms throughout the time he worked at Rudy's. Teresa did not identify the specific amount of cash Arana received each week. However, she explained that the two receipts "show[ed] that he was paid $180 [per] week in addition to his paycheck in 2021-2022."

Teresa further declared that Arana did not work 12 hours a day nor did he work six days a week. She averred that "[h]e worked [eight] hours a day, [five] days a week[,] Monday [through] Friday. During most of his employment, he worked from 4:00[ a.m. to] 8[:00 a.m.] and then from 12:00[ p.m. to ]4:00 [p.m.]." Teresa stated this split shift was at Arana's request, as "he needed the accommodation because of his child with special needs and other issues with his family." Around June 2021, Arana's schedule changed to 4:00 a.m. to 12:00 p.m. based on his request. "However, his workload did not change," which Rudy's contended proved Arana never worked overtime. She also stated Arana received paid holidays and sick leave during the COVID-19 pandemic, and that he engaged in personal tasks for "probably" two to three hours each workday. Teresa asserted that Rudy's provided Arana with all his 30-minute meal and 10-minute rest breaks without further detail.

Rudy's did not present evidence to contradict Neches's damages calculation. Rather, Rudy's relied upon the facts described above to argue that it had no liability whatsoever.

### 3. *Arana's Reply*

Arana argued his evidence established that he performed work for which he was not properly compensated, and this shifted the burden to Rudy's to present evidence about the "precise amount[s]" of Arana's hours. As Rudy's indisputably did not maintain time-keeping records and Arana's wage statements identified the "hours worked" for each pay period as zero, Rudy's had to carry its burden with other evidence. However, Arana argued, Rudy's did not provide corroborating evidence concerning the specific hours he worked. Further, Teresa did not state that she had worked from 4:00 a.m. to 4:00 p.m., Mondays through Saturdays, and thus personally observed the hours Arana worked or that he took rest and meal breaks each day. Arana also argued that had he signed cash receipts every week as Teresa claimed, there should have been "over [70]" receipts, but Rudy's produced only two and did not explain what occurred to the others.

Arana filed objections to Teresa's declaration and the two receipts. The court sustained one objection to a statement by Teresa that Rudy's treated Arana well; it overruled the remaining objections.

### 4. *Rudy's Sur-reply and Arana's Response*

Rudy's filed a sur-reply and a supplemental declaration from Teresa, which the court accepted and considered. Teresa averred that she knew Arana's schedule because she "arrive[d] at the workplace daily around 8:00 [a.m.] and at that time [she] would see [Arana] . . . eat[ing] at a lunch truck and then he would

leave and would not return until [n]oon.  He was not working for [Rudy's] during that time . . . ."  She reiterated that Arana "only worked [five] days a week because [Rudy's was] not even open on Saturdays or Sundays."

The trial court permitted Arana to file a response.  Arana argued Rudy's did not present evidence corroborating Teresa's statements and still failed to demonstrate the existence of a triable issue.

5.    *The Hearing*

On May 21, 2024, the trial court heard Arana's motion. There was no court reporter present, and the trial court certified a settled statement as to what occurred.  Rudy's arguments focused on "credibility issues and the fact that under [Arana]'s theory, he was working for under $6 per hour for many years, which makes no sense."  Rudy's also objected to Neches's declaration for the first time on the grounds that its exhibit B was not attached, "so there was no basis or foundation" for his opinion, and that his opinion was inconsistent with a prior declaration from Neches submitted to the court in January 2022.[8]

Arana "argued that the lack of records require[d] the [c]ourt to grant summary judgment on all issues[,] including meal and rest periods which the [c]ourt's tentative had been to deny."

6.    *The Trial Court's Ruling and Judgment*

On May 23, 2024, the trial court issued an order granting summary judgment.  It found Arana made a prima facie showing as to all causes of action and shifted the burden to Rudy's to

_____

[8] The day after the hearing, Rudy's filed written objections stating these same grounds.

11

demonstrate a triable issue. Likening the matter to *Hernandez*, the court observed, "[Rudy's was] not entitled to rely on the conclusory statements by Teresa" that it committed no violations and instead was "required 'to draw whatever reasonable inference[ ] it can from the employee's evidence where the employer cannot provide accurate information.' " (See *Hernandez*, *supra*, 199 Cal.App.3d at p. 728.) The court found "[Rudy's has] not produced reliable evidence of the precise amount of work performed or reliable evidence negating the reasonableness of the inference to be drawn from [Arana]'s evidence."

As to meal periods, the trial court held a rebuttable presumption arose that Rudy's did not provide Arana with meal breaks because Rudy's records failed to show he took such a break. The court concluded, "[I]n the absence of reliable evidence of the meal periods and rest breaks [Arana] took, or reliable evidence negating the reasonableness of the inference to be drawn from [Arana]'s evidence, [Rudy's] cannot rely on conclusory statements to raise a triable issue of material fact as to the [meal and rest break] [c]auses of [a]ction."

The trial court entered judgment in favor of Arana in the amount of $310,322.63 as of April 23, 2024, with interest accruing at the legal rate of 10 percent per annum.

## DISCUSSION

Rudy's argues we should reverse for three reasons: Arana failed to make his required prima facie showing in moving for summary judgment/adjudication, Rudy's opposition raised triable issues of fact precluding summary judgment/adjudication, and the court erred in considering Neches's declaration. As we explain next, Arana met his prima facie burden, but Rudy's

12

demonstrated triable issues of fact on all causes of action other than Rudy's failure to provide accurate wage statements. As Neches's declaration was irrelevant to the propriety of summary adjudication of the wage statement claim, and triable issues otherwise exist as to the other causes of action, we need not address Rudy's arguments regarding Neches's declaration.

## A.   Summary Judgment Framework and Standard of Review

A "motion for summary judgment shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) A plaintiff seeking summary judgment has met the "burden of showing that there is no defense to a cause of action if that party has proved each element of the cause of action entitling the party to judgment on the cause of action." (*Id.*, subd. (p)(1).) When damage-related issues remain for determination, "it is not appropriate to grant summary judgment." (*Paramount Petroleum Corp. v. Superior Court* (2014) 227 Cal.App.4th 226, 243.)

Once the plaintiff has met that burden, the burden shifts to the defendant "to show that a triable issue of one or more material facts exists as to the cause of action or a defense thereto." (Code Civ. Proc., § 437c, subd. (p)(1).) "An issue of fact can only be created by a conflict of evidence. It is not created by 'speculation, conjecture, imagination or guess work.' [Citation.] Further, an issue of fact is not raised by 'cryptic, broadly phrased, and conclusory assertions' [citation], or mere possibilities [citation]. 'Thus, while the court in determining a motion for summary judgment does not "try" the case, the court is bound to

13

consider the competency of the evidence presented.' [Citation.]" (*Sinai Memorial Chapel v. Dudler* (1991) 231 Cal.App.3d 190, 196-197.)

"A motion for summary adjudication . . . shall proceed in all procedural respects as a motion for summary judgment." (Code Civ. Proc., § 437c, subd. (f)(2).) "A party may move for summary adjudication as to one or more causes of action within an action, one or more affirmative defenses, one or more claims for damages, or one or more issues of duty . . . . A motion for summary adjudication shall be granted only if it completely disposes of a cause of action, an affirmative defense, a claim for damages, or an issue of duty." (*Id.*, subd. (f)(1).)

We review the trial court's summary judgment ruling de novo, " 'considering all of the evidence the parties offered in connection with the motion (except that which the court properly excluded) and the uncontradicted inferences the evidence reasonably supports.' [Citation.]" (*Regional Steel Corp. v. Liberty Surplus Ins. Corp.* (2014) 226 Cal.App.4th 1377, 1388.) We liberally construe the evidence in favor of the nonmoving party, resolving all doubts concerning the evidence in their favor. (*Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618.)

## B. Triable Issues Exist Regarding the Overtime Claims

We begin with Arana's overtime claims. After discussing the circumstances under which burden shifting may apply to those claims, we turn to the question of whether triable issues exist that precluded their summary adjudication.

### 1. *Burden Shifting*

Generally, " 'a party has the burden of proof as to each fact the existence or nonexistence of which is essential to the claim for

14

relief or defense that he is asserting.' (Evid. Code, § 500.)" (*Amaral v. Cintas Corp. No. 2* (2008) 163 Cal.App.4th 1157, 1188, disapproved on another ground in *Cohen v. Superior Court* (2024) 102 Cal.App.5th 706, 727, fn. 11, review granted Sept. 18, 2024, S285484.) However, courts have shifted some aspects of the burden of proof in the wage-and-hour context when the employee has established the fact of a violation and the employer's statutorily-required records are incomplete or inaccurate, so as to not penalize an employee for his or her inability to prove a specific amount of damages due to the lack of such records.

In *Anderson v. Mt. Clemens Pottery Co.* (1946) 328 U.S. 680 [66 S.Ct. 1187, 90 L.Ed 1515], a case involving the Fair Labor Standards Act, the United States Supreme Court stated, "[W]here the employer's [time] records are inaccurate or inadequate and the employee cannot offer convincing substitutes, a . . . difficult problem arises. The solution, however, is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work. Such a result would place a premium on an employer's failure to keep proper records in conformity with his statutory duty . . . . In such a situation we hold that an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the

15

employee, even though the result be only approximate." (*Id*. at pp. 687-688.)

The Court of Appeal in *Hernandez* applied this reasoning to Labor Code violations. In *Hernandez*, it was undisputed that the employee worked overtime, and his employer failed to keep accurate time records as statutorily required. The trial court nevertheless entered judgment for the employer, finding the employee had not carried his burden to establish with certainty the amount of overtime to be awarded. (*Hernandez, supra*, 199 Cal.App.3d at p. 725.) The appellate court reversed, holding that "where the employer has failed to keep records required by statute, the consequences for such failure should fall on the employer, not the employee. In such a situation, imprecise evidence by the employee can provide a sufficient basis for damages." (*Id*. at p. 727.) "Although the employee has the burden of proving that he performed work for which he was not compensated, public policy prohibits making that burden an impossible hurdle for the employee." (*Ibid*.) "Once an employee shows that he performed work for which he was not paid, the *fact* of damage is certain; the only uncertainty is the *amount* of damage." (*Id*. at p. 726.)

Before the burden shifts to an employer to present precise or specific detail as to the *amount* of overtime, the employee must have carried his burden to prove the *fact* of overtime. (*Hernandez, supra*, 199 Cal.App.3d at p. 727; see also *Furry v. East Bay Publishing, LLC* (2018) 30 Cal.App.5th 1072, 1080.) Both *Hernandez* and *Furry*, the cases on which Arana primarily relies, involved bench trials, not motions for summary judgment, where the employer conceded and the court found that the employee had worked overtime; burden shifting therefore applied

16

because the only remaining issue was calculating the amount of unpaid overtime. (See *Furry v. East Bay Publishing, LLC*, *supra*, at p. 1080; *Hernandez*, *supra*, at p. 724.) In contrast, here, there remains a triable issue as to whether Arana worked any overtime at all.

2. *Triable Issues Exist as to the Overtime Claims*

In his fifth cause of action, Arana seeks to recover unpaid overtime wages and related penalties. The first cause of action, for failure to pay all wages, likewise seeks the same monetary award for failure to pay overtime wages along with other categories of wages.[9]

A California employer must pay an employee one and one-half times his or her "regular rate of pay for all hours worked over 40 hours in the workweek" and "for all hours worked in excess of eight . . . hours . . . in any workday." (IWC Order No. 7, subd. 3(A); see § 510.) Arana submitted evidence establishing a prima facie showing that between December 1, 2017 and June 30, 2021, he worked 72-hour weeks but was not paid overtime

_____

[9] "A motion for summary adjudication shall be granted only if it completely disposes of a cause of action . . . ." (Code Civ. Proc., § 437c, subd. (f)(1).) Although the first cause of action includes other categories of allegedly unpaid wages (minimum wage and rest and meal break premium pay) in addition to overtime, for purposes of summary adjudication " ' "cause of action" ' " can mean " 'a group of related paragraphs in the complaint reflecting *a separate theory of liability.*' " (*Lilienthal & Fowler v. Superior Court* (1993) 12 Cal.App.4th 1848, 1853.) "Whether they are pleaded in the same or single counts is not determinative." (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2024) § 10:39.2.) Accordingly, we address the overtime claims collectively.

wages.[10]  Specifically, he declared that he worked 12 hours per day, from 4:00 a.m. to 4:00 p.m., Monday through Saturday. Rudy's does not dispute that Arana began work at 4:00 a.m., and Medina's declaration that he regularly saw Arana leave work at 4:00 p.m., including on Saturdays, corroborated Arana's statements about the hours he worked.

Although Arana met his initial burden, Rudy's presented evidence creating triable issues on the fact of injury that precluded summary adjudication of Arana's overtime claims. Teresa's declaration stated that Arana never worked overtime.  If that was all she said, such a conclusory denial would fail to create a triable issue.  (*Sinai Memorial Chapel v. Dudler*, *supra*, 231 Cal.App.3d at pp. 196-197.)  But that was not the entirety of the evidence.  Teresa worked at the business and helped manage it.  It was undisputed that Arana reported directly to Teresa, so it is a reasonable inference that she knew his work schedule and had foundation to testify regarding it.  Teresa provided additional, more specific testimony on two issues central to whether Arana worked overtime: (1) did Arana work from 4:00 a.m. until 4:00 p.m. (as he contended), or from 4:00 a.m. until 8:00 a.m., and then again from noon to 4:00 p.m. (as Teresa testified Arana requested and she observed), and (2) did Arana work on Saturdays (Arana submitted evidence that he did, but Teresa's declaration said the business was closed that day so Arana could not have worked then).

---

[10] It is undisputed that for the period July 1, 2021 through January 22, 2022, Arana worked 40 hours per week and is not owed overtime wages.

18

Arana argues this evidence cannot create a triable issue because Teresa's statements are uncorroborated and not credible. However, " '[t]he sole declaration of a party opposing a summary judgment motion which raises a triable issue of fact is sufficient to deny that motion.' [Citations.]" (*Veera v. Banana Republic, LLC* (2016) 6 Cal.App.5th 907, 922; see Evid. Code, § 411.) As for credibility, a trial court may not "weigh the credibility of a declaration submitted by the party opposing a summary judgment motion and then grant the motion, except where the declaration is facially so incredible as a matter of law that the moving party otherwise would be entitled to summary judgment." (*Estate of Housley* (1997) 56 Cal.App.4th 342, 359-360.) Arana has not met this standard.

## C.   Triable Issues Exist Concerning the Minimum Wage Claim

Triable issues also exist with regard to Arana's first cause of action as to his claim that Rudy's failed to pay minimum wage. Under California law, an employer must pay an employee "not less than the applicable minimum wage for all hours worked in the payroll period." (IWC Order No. 7, subd. 4(B); see § 1197.1.) The applicable minimum wage per hour for Arana (the L.A. minimum wage) was $12 in July 2018, $13.25 in July 2019, $14.25 in July 2020, and $15 in July 2021. (L.A.M.C. § 187.02(C).)

Arana declared that he received a weekly wage of $420 at all relevant times. He substantiated this claim with weekly wage statements evidencing that Rudy's paid him this amount between December 21, 2019 and October 15, 2021. Based on a 40-hour week, this wage amounts to $10.50 per hour, which, by July 1, 2018, fell below the L.A. minimum wage. (L.A.M.C. § 187.02(C).)

Additionally, there is no dispute that Rudy's paid Arana $420 by check each week throughout the relevant period. Thus, Arana established a prima facie case that Rudy's violated minimum wage laws.

Although the contrary evidence on the fact of injury was sparse, when considered in the light most favorable to Rudy's it raised a triable issue of fact. It was undisputed that Teresa was Rudy's chief financial officer and treasurer, and it is, thus, reasonable to infer she was familiar with its finances including payroll expenses. Teresa averred that Arana "was never paid below minimum wage." She further asserted that throughout Arana's employment he was paid partially in cash. In light of her testimony that Arana was always paid minimum wage, one can reasonably infer these cash payments when combined with the checks Arana was given meant his ultimate compensation equaled the minimum wage. Additionally, Teresa testified that she personally witnessed such cash payments and that she had receipts for two such payments in the 2021 to 2022 timeframe.

Crediting this evidence as we must at this stage of the proceedings, it was sufficient to establish that Arana was in fact paid minimum wage during his employment. (See *Regents of University of California v. Superior Court*, *supra*, 4 Cal.5th at p. 618.) As with the overtime claim, the burden shifting in *Hernandez* therefore did not yet apply as the fact of damage was not yet certain. Accordingly, summary adjudication of the minimum wage claim in Arana's favor was improper.

## D. Triable Issues Exist as to the Alleged Meal Break Violations

Rudy's was obligated to provide Arana with a meal break. Section 512 and IWC Wage Order No. 7 prohibit an employer

20

from employing "an employee for a work period of more than five hours" without relieving the employee from work duties and "providing the employee with a meal period of not less than 30 minutes." (§ 512, subd. (a); IWC Order No. 7, subd. 11(A).) Section 226.7 provides that an employer who "fails to provide an employee with a meal . . . period in accordance with a state law," which includes IWC orders, "shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal . . . period is not provided." (*Id.*, subd. (c).) IWC Order No. 7 also requires an employer to keep "[t]ime records showing when the employee begins and ends each work period. Meal periods, split shift intervals and total daily hours worked shall also be recorded." (*Id.*, at subd. 7(A)(3).)

In a concurring opinion in *Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, Justice Werdegar opined that when an employer does not record that its employee took a meal break, a rebuttable presumption should arise that a meal break was not provided. "If an employer's records show no meal period for a given shift over five hours, a rebuttable presumption arises that the employee was not relieved of duty and no meal period was provided. This is consistent with the policy underlying the meal period recording requirement, which was inserted in the IWC's various wage orders to permit enforcement. [Citation.]" (*Id.* at p. 1053.) In 2021, our Supreme Court adopted Justice Werdegar's discussion of this rebuttable presumption "in full." (*Donohue v. AMN Services, LLC* (2021) 11 Cal.5th 58, 75.)

It is undisputed that Rudy's did not maintain records tracking when and for how long Arana took his meal break. This gave rise to "a rebuttable presumption of meal period violations

21

at summary judgment." (*Donohue v. AMN Services, LLC*, *supra*, 11 Cal.5th at p. 74.) In addition to this presumption, Arana declared he never received more than a 10- to 15-minute lunch break throughout the relevant period. "Providing employees with short or delayed meal periods is just as much a violation of the meal period provisions as failing to provide employees with a meal period at all." (*Id*. at p. 76.) Thus, Arana carried his initial burden on summary adjudication to establish that Rudy's did not provide him with the required 30-minute meal break.

Rudy's evidence, however, established a triable issue on whether any meal break violation occurred. (*Donohue v. AMN Services, LLC*, *supra*, 11 Cal.5th at p. 78 ["the employer may rebut the presumption with evidence of bona fide relief from duty"].) Teresa, to whom Arana reported, declared that Arana "was always provided with all his 30-minute meal . . . breaks," and more specifically that she observed him taking that meal break when she arrived at work around 8:00 a.m. Construed in the light most favorable to Rudy's, this evidence was sufficient to raise a triable issue regarding whether Arana was afforded required meal breaks.

E.    **Triable Issues Exist as to the Alleged Rest Break Violations**

California requires that "[e]very employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof. However, a rest period need not be authorized for employees whose total daily work time is less than three and one-half (3½) hours. Authorized rest period

22

time shall be counted as hours worked for which there shall be no deduction from wages." (IWC Order No. 7, subd. 12(A).) "If an employer fails to provide an employee a rest period in accordance with the applicable provisions of this order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each work day that the rest period is not provided." (*Id.*, at subd. 12(B); see also § 226.7, subd. (c).)

Unlike meal breaks, "authorized rest periods need not be recorded" (IWC Order No. 7, subd. 7(A)(3)), and, thus, there appears to be no basis for a rebuttable presumption as described in *Donohue* and *Brinker*, as that presumption is based on a failure to keep statutorily-required records. Regardless, Arana met his initial burden to show that Rudy's did not authorize rest breaks and that he did not receive them. Specifically, Arana declared that he was never "given or offered" a rest break. He further stated he did not know that Rudy's was required to give him rest breaks until he filed the lawsuit. Thus, one can infer that to the extent he took breaks, he did so by happenstance and not in accord with applicable regulations.

Rudy's evidence to the contrary was a conclusory statement from Teresa that Arana received all his 10-minute rest breaks, accompanied by her assertion that Arana spent two to three hours while at Rudy's not actually working but instead doing personal things. This evidence does not give rise to a triable issue that Arana received his rest breaks. We disregard, in the absence of any additional detail, the conclusory statement that Rudy's provided the required rest breaks as it lacks any specificity whatsoever; her statement also lacked foundation, as Arana worked four hours each day before Teresa arrived at the business. That leaves only Teresa's statement that she saw

23

Arana shirking, which has nothing to do with whether Rudy's authorized required rest breaks, when they occurred, or that Arana took them in accordance with what the law allowed.

Although there was no triable issue as to liability, there is a triable issue as to the amount of Arana's damages for Rudy's rest break violations. It is unclear whether burden shifting under *Hernandez* applies to the rest break claim. On the one hand, *Hernandez* explained that its reasoning applies to situations "where the employer has failed to keep records required by statute" (*Hernandez, supra*, 199 Cal.App.3d at p. 727), and California does not require employees to keep records regarding when rest breaks occur. On the other hand, one later case has suggested courts "must take account of numerous factors in determining whether it is appropriate to shift the burden of proof [citation], and the absence of an express duty of recordkeeping is not dispositive." (*Amaral v. Cintas Corp. No. 2, supra*, 163 Cal.Ap.4th at p. 1190.)[11] We need not decide that question, which neither party has addressed, because there is a fundamental disagreement, supported by admissible evidence on

---

[11] One court has cited *Hernandez* in discussing plaintiff employees' rest break claims, but *Hernandez* had no application to the court's analysis. (See *Cicairos v. Summit Logistics, Inc.* (2005) 133 Cal.App.4th 949, 961-963.) In *Cicairos*, the appellate court reversed a grant of summary judgment in favor of the employer (a distributor of grocery goods) on a rest break claim, finding triable issues regarding liability based on evidence the employer's timekeeping system did not include a code for rest breaks (arguably encouraging drivers not to take such breaks), testimony from the employee truck drivers that they felt pressured not to take rest breaks, and evidence that management was aware drivers were not taking rest breaks. (*Id*. at p. 963.)

both sides, as to whether Arana worked five or six days a week. Arana contends that Rudy's owes him rest break premium pay of $15,882, a total that depends on Arana's contention that he worked six days a week. However, as described above, there remains a triable issue whether Arana worked on Saturdays.

## F. Triable Issues Exist as to Arana's UCL Cause of Action

Neither party addresses Arana's UCL claim. That claim seeks, among other things, restitution in the form of unpaid wages. "[O]rders for payment of wages unlawfully withheld from an employee are . . . a restitutionary remedy authorized" under the UCL. (*Cortez v. Purolator Air Filtration Products Co.* (2000) 23 Cal.4th 163, 177.) Because we reverse as to Arana's unpaid overtime, minimum wage, and meal and rest break premium pay claims, disputed issues exist as to Arana's UCL cause of action. Accordingly, Arana was not entitled to summary adjudication of that claim.

## G. No Triable Issues Exist as to Rudy's Wage Statement Violations

The undisputed facts show that Arana did not receive, and Rudy's did not prepare or provide, accurate wage statements during his employment. Those wage statements described him as salaried, and said he worked zero hours each pay period, representations that Rudy's did not dispute were wrong. As relevant here, section 226, subdivision (e)(1) permits an employee who "suffer[ed] injury as a result of a knowing and intentional failure by an employer to [provide required accurate wage statements] is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for

25

each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000)" as well as "an award of costs and reasonable attorney's fees."

Rudy's argues for the first time in its reply brief that Arana adduced no evidence that its failure to provide accurate wage statements was knowing and intentional. (§ 226, subd. (e)(1).) Having failed to make any such argument in its opening brief, Rudy's has forfeited it. (*Hurley v. Department of Parks & Recreation* (2018) 20 Cal.App.5th 634, 648, fn. 10.) In any event, Teresa declared that she paid Arana part of his hourly wage under the table in cash to help Arana claim benefits. It is a reasonable inference from her statement that Rudy's also knowingly and intentionally failed to include Arana's true wages and hours worked on his wage statements for the same reason. In sum, there is sufficient evidence that Rudy's prolonged provision of inaccurate wage statements was knowing and intentional, and Rudy's submitted zero contrary evidence.

Given the length of time for which Rudy's did not provide accurate wage statements, the $4,000 statutory maximum easily applies.[12] Rudy's opening brief essentially concedes it owes Arana $4,000 in penalties for violating section 226, saying "Arana

---

[12] One need not rely on Neches's declaration to determine this figure. Straightforward mathematical calculations do not require expert testimony. (*Allgoewer v. City of Tracy* (2012) 207 Cal.App.4th 755, 761-762.) The applicable statute sets out how to calculate penalties, and taking the number of pay periods at issue and multiplying it by that penalty schedule shows a number far in excess of the statutory cap. As Neches's declaration is unnecessary to this calculation, Rudy's objections to it have no relevance to summary adjudication of the wage statement claim.

is owed nothing except perhaps penalties for inaccurate wage statements," and fails to include any reasoned argument to the contrary. Thus, summary adjudication of the fourth cause of action, for wage statement violations, was proper.

## DISPOSITION

The judgment and the trial court's order granting Arana's motion for summary judgment are reversed. Upon remand, the court is to enter a new order granting summary adjudication as to the fourth cause of action and denying summary judgment as to the remaining causes of action.

Each party is to bear its own costs on appeal.

NOT TO BE PUBLISHED

WEINGART, J.

We concur:

ROTHSCHILD, P. J.

BENDIX, J.